The State ex rel. Cannon v. May.

THE STATE *ex rel.* CANNON *et al.* v. MAY.

DIVISION TWO.

1.   **Kansas City Charter:** SUPERINTENDENT OF STREETS, APPOINTMENT OF.   The office of superintendent of streets in Kansas City is filled by the appointment of the mayor, subject to the confirmation of the common council, and this is true as well since the adoption of the new city charter of 1889 as before such date.

2.   ———— : ———— : OFFICER.   Said superintendent of streets is an officer and not a mere employe of the city.

3.   ———— : ———— : CHANGE IN NAME OF OFFICE.   The mere change in the name of an office does not affect the office itself.

4.   **Construction:** STATUTE.   Where a statute enumerates particular classes of persons or things followed by general words, the latter will be limited in their meaning to objects of like kind with those specified.   ( *State v. Bryant,* 90 Mo. 534. )

5.   **Mandamus:** OFFICE, TITLE TO.   *Mandamus* is not the proper remedy to determine the title to an office.

6.   ———— : ———— : BOOKS AND PAPERS.   Where, however, such title is uncontested or has been settled by adjudication, *mandamus* will lie to compel the delivery of books and papers belonging to the office.

7. ———— : ————. While *mandamus* is not the proper remedy to determine the title to an office, yet where an alternative writ has been issued on a *prima facie* showing and jurisdiction obtained, the court may decide the case on its merits.

## Mandamus.

W RIT DENIED.

THIS is an extraordinary proceeding by *mandamus*, brought by the relators, constituting the board of public works of Kansas City, and W. L. Sheppard, their appointee, as superintendent of streets against respondent, John May, the superintendent of streets of said city, appointed by the mayor, by and with the consent of the common council of said city, for the possession of certain office furniture and public records.

The petition and pleadings are, perhaps, the best statement of the case, and are substantially as follows: The petition in substance alleges: That the city of Kansas City is a municipal corporation incorporated by special charter under and by virtue of section 16, of article 9, of the constitution of the state of Missouri; that by the provisions of said charter there was established within and for the city an executive department to be known as the "board of public works;" that the relators herein as designated now constitute the board of public works of the city.

That under and by virtue of said charter the common council of the city of Kansas City, by its ordinance, number 268, duly adopted and approved on the second day of August, 1889, entitled, "An ordinance defining the duties of the board of public works, establishing departments under their control, fixing the number of employes, and the salaries of the same," which said ordinance is in words and figures as follows:

"No. 268. An ordinance defining the duties of the board of public works, establishing departments under their control, fixing the number of employes, and the salaries of the same.

"*Be it ordained by the common council of Kansas City:*

"ARTICLE I.

"Section 1. The duties of the board of public works shall be to meet at its office at least once a week in open session to consider and take under advisement such business as may come before it. Said board shall employ at least one engineer, who shall be known as the city engineer, and it shall appoint such additional engineers, inspectors, clerks, assistants, and other persons as may be necessary, subject to removal at the will of the board, for cause, by a vote of three-fourths of said board, and all employes shall give bond as is now required or may hereafter be required by ordinance.

"Sec. 2. Said board shall supervise the grading and paving of all streets, avenues, alleys and public grounds; the cleaning, sprinkling, repairing and improving of all streets, alleys and public places; the construction, altering and repairing of all bridges, culverts, receiving basins, sewers, drains and water courses within said city; the laying of gas and water pipes through any street or alley, and the issuing of permits for connecting with any gas, sewer or water pipes; the laying down and repairing of all sidewalks, crosswalks, curbing and guttering; the construction of all vaults under any portion of said streets; the construction, alteration and removal of all buildings, houses, barns, stables, fences and other similar improvements upon lots and lands within the limits of the city, and the issue of permits therefor. The construction and repair of the city hall, engine-houses and other public buildings in the city.

"Sec. 3. It shall be the duty of the board of public works to purchase all supplies and material needed by the city in its several departments. In all cases where the cost of said supplies and material shall exceed the sum of $500, it shall be the duty of said

board to advertise for proposals for such supplies and materials, and they shall award the contract to the lowest and best bidder, requiring a bond for the fulfillment of the contract: Provided that the board shall have the right to reject any and all bids, if not deemed satisfactory, and re-advertise in like manner as at first. When the cost of such supplies or material shall not exceed the sum of $500, the board may make such purchases in whatsoever manner they may deem for the best interests of the city.

"Sec. 4. It shall be the duty of the board to divide or classify the various works or interests under its control into departments, so far as may be, and keep an accurate account of each branch, showing the amount expended for original improvements and constructions, and the amount for repairs, superintendence and other expenditures, exhibiting the source of expenditure; to make a report in writing to the common council once every three months or oftener if required, giving the expenditures of the different branches or departments of the work under the control of said board and embracing a statement of the condition, progress and operation of the work under its charge; to furnish through its president to the mayor and common council, or either branch thereof, such data or information as may be from time to time necessary to report; at the beginning of each fiscal year to submit to the comptroller a statement of the estimated amount required by said board for repairs and improvements during the ensuing year; to keep books of account showing with entire accuracy the receipts and expenditures of the board in such manner as to enable the same to be understood and investigated, and also to preserve on file in his office duplicate vouchers for all its expenditures, which books and duplicates shall at all times be open to the examination of the comptroller, finance committee of the common council or any other committee appointed by said council.

"Sec. 5. All contracts and official acts of the board of public works shall be signed by the president or by two members of the board, attested by the secretary under seal of the board.

"Sec. 6 (as amended). The board of public works is hereby authorized to employ the following persons: Secretary, per year, $1,800; chief clerk (purchasing agent), $1,500; clerk (bookkeeper), $1,000.

"Sec. 7. Said board shall also exercise such other powers and perform such other duties in the superintendence of public work, improvements and repairs constructed by authority of the common council of the city, or owned by the city, as may be prescribed by ordinance. Said board shall make such rules and regulations as may be necessary for the government of its departments, not inconsistent with the charter or ordinances of the city.

## "ARTICLE II.

### " Departments.

"Section 1. The following departments of the board of public works are hereby established, viz.: The department of engineering, the department of streets and alleys, and the department of buildings.

### " Department of Streets.

"Sec. 4 (as amended). The head of this department shall be the superintendent of streets, with a salary of $2,000 per year; clerk, $1,200; inspectors, not to exceed two in number, each $1,000; carpenters, not to exceed five in number, while employed, each per day $2.50; masons, not to exceed two in number, while employed, each per day $3.50; pavers, not to exceed four in number, while employed, each per day $2.75; foremen, not to exceed six in number, while employed,

each per day $2.50 ; laborers, not to exceed one hundred in number, while employed, each per day $2 ; teams and drivers, not to exceed thirty in number, for team and driver, while employed, each per day $3.50.

"Sec. 5. It shall be the duties of the department of streets to have charge of the repairs of all streets and alleys, to repair all bridges, sidewalks and curbing, to construct all street crossings and to repair the same and to have charge of the cleaning and sprinkling of streets. It shall have charge of the repairs of sewers and catch-basins and the erection of all telegraph, telephone and electric light poles. It shall also have the supervision of all excavations and fillings made for the laying of gas and water pipes, the repairing of sewers, or for any other purpose whatsoever in the streets and alleys in the city. It shall have charge and control of all implements and teams employed in such work, of all tools and implements issued for such work, and to do such other things as may be from time to time required by the board of public works.

"Sec. 6. All ordinances or parts of ordinances in conflict with this ordinance are hereby repealed." Approved, August 2, 1889.

That relator Sheppard has been appointed superintendent of streets by said board as they claim by virtue of said ordinance and qualified as such, and has demanded of respondent May the books and records pertaining to said position, and May's refusal to deliver the same.

The defendant's return to the alternative writ admits that the relators named in the petition do constitute and are the board of public works of Kansas City, Missouri. Admits that he has possession of the property mentioned in the petition and alternative writ and that he refused to deliver the possession thereof to the board of public works of Kansas City, for the reason that he is entitled to the possession of the same, and that he so holds the said possession by claim of

right. Denies that the board of public works has any right to appoint the superintendent of streets. Denies that the relator Sheppard was appointed superintendent of streets. Denies that he has been duly qualified or given bond as such superintendent as required by charter and ordinance. Denies each and every other allegation set forth in the alternative writ except such as expressly admitted. Denies that he was appointed superintendent of streets for the period of one year.

For further return to said writ says that by the revised ordinances of said city charter 49, sections 973, 974, 975, 976, approved May 12, 1888, there was created the office of street commissioner or superintendent of streets who was to be appointed by the mayor with the consent of the common council, who was to hold such office for the term of one year and until his successor was duly appointed and qualified ; that under said ordinance it was the duty of such officer to superintend and direct all repairs of streets, alleys and crossings, etc., etc.; that such officer, before entering upon the discharge of the duties of said office, was required to give bond to Kansas City, Missouri, in the sum of $10,000, to be approved by the city comptroller, conditioned for the faithful performance of all the duties of said office.

That upon the first day of June, 1891, he was duly appointed by the mayor of Kansas City, Missouri, by and with the consent of the upper house of the common council of said city to the office of street commissioner or superintendent of streets of said city, and that on the second day of June, 1891, he took the oath of office and gave bond as required by the charter and ordinances of said Kansas City, which bond was on said second day of June duly approved by the city comptroller of said Kansas City, Missouri, and thereupon he filed with the city clerk of said city a certificate of appointment of such office, with the oath of office indorsed thereon. That immediately after his appointment, to-wit, on June 2, 1891, he entered on the

The State ex rel. Cannon v. May.

discharge of the duties of said office and became entitled and took possession of the property pertaining to such office and mentioned in the alternative writ of *mandamus* therein. That at all times since he entered upon the discharge of said duties under said appointment he has been in the active discharge of all the duties of said office, and has been recognized as such officer by the board of public works, and which has furnished him with supplies for the work of said office, and this defendant claims title to the same office and the right to the possession of all said personal property by virtue of his said appointment.

The reply denies the authority of the mayor to appoint and alleges that the sections 973, *et seq.*, are repealed by the new charter and ordinance 268.

*T. F. Gatts* and *Withers & Strother* for relators.

(1) The ordinance, under the charter of 1875, creating the office of street commissioner is repugnant to and inconsistent with the new charter, and is repealed thereby. *State v. Dolan*, 93 Mo. 467; *State v. Herman*, 70 Mo. 441; *State v. Roller*, 77 Mo. 120. (2) A statute revising the whole subject-matter of a former statute and evidently intended as a substitute for it, although it contains no express words to that effect, repeals the former. *State v. Roller*, 77 Mo. 120; *Smith v. State*, 14 Mo. 152; *Bartlett v. King*, 12 Mass. 537; *Cons v. Cooley*, 10 Pick. 37; *State v. Judge*, 37 La. Ann. 578; *Herold v. State*, 16 Tex. App. 157. (3) The rule of construction that general words follow particular words of description is a rule of construction merely to ascertain the real intention of the lawmakers, and not a rule of abrogation. *City of Kansas v. Vindquest*, 36 Mo. App. 584; *State v. Williams*, 35 Mo. App. 541; *Foster v. Blount*, 18 Ala. 687; *State v. Cooper*, 5 Day, 250; *Commonwealth v. Wyman*, 8 Met. 247; *United States v. Briggs*, 9 How. 351; *St. Louis v. Herthel*, 88 Mo.

128 ; *Tugman v. City*, 78 Ill. 406 ; *Connor v. Railroad*, 59 Mo. 293 ; *Rosenblatt v. Herman*, 70 Mo. 441 : *Bingham v. Birmingham*, 103 Mo. 345 ; *Nichols v. Halliday*, 27 Wis. 406 ; Endlich on Interpretation of Statutes, sec. 265. (4) · Courts in construing statutes will not only strike out words from a statute, but transpose words and sentences and sections of an act and supply provisions apparently omitted by inadvertence. *State ex rel. v. King*, 44 Mo. 283 ; *Bingham v. Birmingham, supra.* (5) The grammatical construction should not be followed when it leads to repugnance to the subject-matter. *Railroad v. Railroad*, 2 Mo. App. 69. (6) That it was competent for the legislature (that is, in the case at bar, the framers and adopters of the charter) to abolish the office of street commissioner, is settled beyond controversy. *Primm v. Carondelet*, 23 Mo. 22 ; *Head v. Curators*, 47 Mo. 220. (7) *Mandamus* is the proper remedy for the board to recover the books, papers, records and paraphernalia of the department of streets wrongfully withheld from it by respondent. *State v. Trent*, 58 Mo. 571, and cases cited ; *State v. Saxon*, 25 Fla. 792 ; s. c., 6 South Rep. 858 ; *Driscoll v. Jones*, 44 N. W. Rep. ( S. D.) 726 ; *Metsker v. Neally*, 21 Pac. Rep. ( Kan.) 206 ; s. c., 41 Kan. 122 ; *Fitzpatrick v. Kirby*, 81 Va. 467 ; Dillon on Mun. Corp. [ 3 Ed. ] secs. 302, 845, 846, 848, and notes ; Wood on Mandamus, pp. 28–30, 105, 107. For these reasons we think the peremptory writ should be awarded.

*F. F. Rozzelle, R. W. Quarles, Wash Adams* and *T. R. Morrow* for respondent. ˟

(1) "Where an office is already filled by an actual incumbent exercising the functions of the office *de facto*, and under color of right, *mandamus* will not lie to compel the admission of another claimant, nor to determine the disputed title." *State ex rel. v. Taaffe*, 25 Mo. App.

570 ; *State ex rel. v. County Court*, 25 Mo. App. 446 ; *State ex rel. v. Auditor*, 36 Mo. 72 ; *County Court v. Sparks*, 10 Mo. 120 ; *State ex·rel. v. John*, 81 Mo. 13 ; *Ellison v. Aldermen*, 89 N. C. 125 ; *People v. New York*, 3 John. Cas. 79 ; *Bonner v. State*, 7 Ga. 473 ; *People v. Stevens*, 5 Hill, 627 ; *People v. Detroit*, 18 Mich. 338 ; *King v. Winchester*, 7 Ad. & El. 222 ; *Regina v. Guardian*, 17 Q. B. 159 ; 17 Adol. & El. 158. ( 2 ) *Mandamus* should only go in cases of this kind ( to deliver books, etc.) where the relator holds an uncontested title to the office, or where his title has been adjudicated and finally established by a competent tribunal and he has been put in actual possession. 115 Ind. 245 ; 103 Ind. 444 ; 68 Mich. 323 ; and also *Detroit v. Board*, 23 Mich. 546. ( 3 ) Besides the defendant May is the rightful incumbent, and the peremptory writ should for that reason be denied. ( 4 ) It is a " celebrated rule " of statute construction, that where a statute enumerates particular classes of persons or things, followed by general words, the general words will be limited in their meaning and restricted in their operation to objects of like kind with those specified. *State v. Bryant*, 90 Mo. 534. ( 5 ) The superintendent of streets in Kansas City is an officer and not a mere employe. *King v. Burnett*, Caruthers, 479 ; *State v. Valle*, 41 Mo. 29 ; 17 S. & R. 233 ; 29 Ohio State, 347 ; 36 Miss. 273 ; 42 N. Y. 482 ; 6 Wallace, 385 ; 47 Mo. 226 ; 19 Wallace, 526.

GANTT, P. J.—There is substantially no dispute about the facts. They are disclosed in the pleadings and the charters and ordinances pleaded, and in the evidence. Such as are not set forth in the pleadings are sufficiently stated in the opinion. The relators constitute the board of public works, and their appointee under the charter of Kansas City, adopted at a special election, April 8, 1889, and in force, from and after May 9, 1889. The charter in force, prior to the adoption of the new charter, was the amended charter of 1875.

By the charter of 1875, article 3, section 1, paragraph 7, the common council of the city were granted the right "to have exclusive control and power over the streets, sidewalks, alleys, landings, public grounds and highways of the city; to open, alter, widen, extend, establish, grade, pave or otherwise improve, clean and keep in repair the same; to prevent and remove all encroachments thereon or obstructions thereof; to put drains and sewers in the same and to regulate the building of vaults under sidewalks." Under the authority given the city to exercise the power they granted, by ordinance, the common council, by sections 973, 974, 975 and 976 of the revised ordinances of 1888, provided that:

"Sec. 973. There shall be appointed by the mayor, by and with the consent of the common council, some suitable person who shall act as street commissioner; who shall hold *his office for the term of one year*, and until his successor is duly appointed and qualified.

"Sec. 974. It shall be the duty of such *officer* to superintend all repairs of streets and alleys; to attend to all cleaning of such streets, alleys and crossings, and all repairs of such, that may be ordered by the council or directed by the city engineer to be done; to have charge of the appointment and control of all foremen, teams, laborers and mechanics employed in such work; to keep and return the time of all persons engaged in such work, and make out and certify the same monthly to the auditing committee, in form of pay rolls; to hold and have charge of all tools and implements used in such work; and to do such other acts as may, from time to time, be required by ordinance or law.

"Sec. 975. Before entering upon the duties of his office, said street commissioner shall give bond to the City of Kansas in the sum of $10,000, to be approved by the city comptroller, for the faithful performance of his duties as such street commissioner.

" Sec. 976.    Said street commissioner shall receive for his services such compensation as may be fixed by the common council of the city."

It is conceded that, unless this ordinance providing for the appointment of a street commissioner has been repealed by the adoption of the charter of 1889, that the respondent May is, by virtue of the appointment of the mayor and the confirmation of the common council, the superintendent of streets of Kansas City, and the proceeding must fail.

Section 1, article 17, entitled "Miscellaneous provisions" of the charter of 1889, provides " All ordinances, regulations and resolutions in force at the time this charter takes effect, and not inconsistent with the provisions thereof, shall remain and be in force until altered, modified or repealed by the common council."

. It is not claimed that there has been an express repeal of sections 973, 974, 975 and 976 of the revised ordinances of 1888, but the relators maintain these sections are repugnent to and inconsistent with the new charter and hence repealed by necessary implication.

As the foundation of this contention the relators bring into juxtaposition the following provisions of the two charters of 1875 and 1889, for the purpose evidently of demonstrating that the powers granted the common council by the charter of 1875 are, by the freeholder's charter of 1889, vested in the board of public works, to-wit:

"Charter of 1889, article 4, page 64.

"Sec. 7. The board of public works shall prepare, as soon as may be, a general plan of laying out into streets and alleys all such portions of that territory now or hereinafter included within the corporate limits of the city as shall not already be laid out at the time of taking effect of this charter, etc.

"Sec. 10. Said board shall supervise the grading and paving of all streets, avenues, alleys and public grounds; the cleaning, sprinkling, repairing and improving of all streets, avenues, alleys, public places; the construction, altering and repairing of all bridges, culverts, receiving basins, sewers, drains and water courses within the city; the laying of gas and water pipes through any street or alley, and the issuing of permits for connecting with any gas, water or sewer pipe; the laying down and repairing of all sidewalks, crosswalks, curbing and guttering; the construction

"Charter of 1875, article 3," of legislative powers of the common council, page 12, chapter and ordinances of 1888.

"*Seventh.* To have exclusive control and power over the streets, sidewalks, alleys, landings, public grounds and highways of the city; to open, alter, widen, extend, establish, grade, pave, or otherwise improve, clean and keep in repair the same; to prevent and remove all encroachments thereon, or obstructions thereof; to put drains and sewers in the same and to regulate the building of vaults under sidewalks.

"*Eighth.* To establish, erect and keep in repair bridges, culverts and sewers and to regulate the use of the same; to establish, alter and change the channel of water courses, and to wall them up and cover them over.

"*Eleventh.* To provide for inclosing, improving and regulating all public grounds belonging to the city."

of vaults under any portion of said streets; the construction, repair, alteration and removal of all buildings, etc., and the issuing of permits thereof."

"Charter of 1889, article 4, page 63, 'Board of Public Works.'"

"Sec. 4. Said board shall employ at least one engineer who shall be known as the city engineer, and it shall appoint such additional engineers, inspectors, clerks, assistants and other persons as may be necessary, but the number of such additional appointees and the compensation of all employes and appointees of said board shall be as provided by ordinance." Charter, 1889, page 63.

"Charter of 1875, article 4.

"Sec. 11. There shall be a city clerk, city engineer, city counselor and city comptroller, who shall be appointed by the mayor by and with the advice and consent of the common council.

"Sec. 12. There shall also be such other officers, servants and agents of the corporation as may be provided by ordinances, who shall perform such duties as may be prescribed by ordinance." Charter, 1875, page 20.

I. The powers of the common council concerning other officers, agents and servants of the corporation under the new charter of 1889, not specially provided for by the charter, will be found in the seventeenth section of article 3, as follows: "To provide for and regulate the election or appointment of city officers required by this charter or authorized by ordinance, prescribe their duties, and to provide for their suspension or removal in all cases not provided for by this charter, and to establish the salaries of all officers and the compensation of all employes," etc. Charter, 1889, p. 17.

But the learned counsel for relators apparently overlook the fact that paragraph or sub-section 5 of section 1, article 3, of the new charter of 1889, confers upon *the common council* identically the same power, that is given in sub-sections 7, 8 and 11, section 1, of article 3, of the charter of 1875. So that it is clear that the legislature did not intend to repeal that feature of the charter of 1875, as it is expressly reaffirmed. Now it has passed into a settled rule of construction that repeals by implication are not favored, so that if we can ascertain, by comparing the ordinances and charters, what was in the legislative mind, and sustain both the powers granted the common council, and, at the same time, effectuate the purpose in view in the establishment of the board of public works, it is our clear duty to do so. The claim, that the board of public works, and *not the mayor*, with the consent of the council, has the power to appoint the street commissioner or superintendent of streets, is based on section 4, article 4, page 63, charter of 1889, hereinbefore fully set forth. Indeed, if it cannot be found here, there is no basis for the assumption of such a right.

An examination of the two charters and the ordinances of 1888 discloses that the engineer's department under the charter of 1875 was perhaps the most extensive of the city government. Under them the engineer was: *First.* To superintend the construction of all public works. *Second.* To make plans and specifications and estimates thereof. *Third.* To do the surveying and engineering of the city. *Fourth.* To examine the condition of all streets, avenues, alleys, sidewalks and other public places; and to have supervisory control of the repair and improvement of the same. *Fifth.* To cause to be carried into effect all ordinances of the city concerning streets and public places; to superintend and control the opening and improving thereof, and to prevent and remove all

obstructions therein. *Sixth.* To prepare plans, speci-
fications and estimates of the cost of all public or
district sewers, and to have control of their construction.
*Seventh.* To preserve in his office all maps, plats,
profiles, surveys and books and papers relating thereto.
*Eighth.* To furnish as required to the council such
reports as they might require, and to make plans,
specifications and estimates of all work done by or
on account of the city. *Ninth.* To report violations
of contracts and suspend work thereunder when the
contractor violated the terms thereof or failed to comply
with the engineer's directions. *Tenth.* To sign all
contracts on behalf of the city for all public improve-
ments, and to superintend the execution thereof.
*Eleventh.* To keep a record of special tax bills. Rev.
Ord. 1888, sec. 362.

Under the old system the city engineer was
authorized to employ additional engineers. Rev. Ord.
1888, sec. 363.

There were also recognized by ordinances in the
engineer's department under the old system inspectors,
clerks, assistants, as superintendent of construction and
other persons such as transit men, draughtsmen and
rod men. Rev. Ord. 1888, secs. 366, 367, 368, 369.

So that at the time of the adoption of the new
charter there was a department of the city government
exercising practically all the functions conferred upon
the board of public works by the new charter. It
seems too clear for argument that it was the intention
and purpose of the charter framers to transfer these
duties, that had so multiplied as to become incongruous
in the engineer's department, to the board of public
works, and impose upon it the same responsibility as
had previously been imposed upon the city engineer.
The charter makers carefully reserved to the city
engineer's department those duties which were appro-
priate thereto. Now, prior to the change, the city
engineer's department had virtually the same powers as

the board of public works now has, and along with them and subject to the *engineer's supervision* was the street commissioner's department.

It was clear that the city engineer had no power of appointment or removal of the street commissioner. Now, when the duties were by charter and ordinance imposed upon a board to succeed. him, with the same general powers, is it to be presumed that the charter framers intended to enlarge the powers of that department beyond its well-defined scope? We think not. On the contrary, we think from an examination of the kindred sections, that, as the framers of the charter came to consider this department of the city, it became evident that the engineer's office was burdened with duties which did not logically or naturally appertain to it. Hence, the necessity for creating a board to whom could be confined these incongruous duties, reserving, how-ever, all that properly belonged to the engineer to that office. The street department was well defined at that time. It would, in our opinion, violate all natural pre-sumption to presume that the charter makers intended to abolish an office or a department so vital to the welfare of the city by mere implication. The fact that they imposed upon this new department the same duties already exer-cised by the city engineer, namely, that of, *supervis-ion*, is a satisfactory indication that they intended not to abolish the street commissioner's office but to subject it to the same supervision by this new board.

Recurring again to the provision of section 4, article 6, of the charter of 1889, it is to be kept in mind, that the only power of appointment there given is to *employ* one engineer and *appoint* such additional *engineers, inspectors, clerks, assistants and other persons as may be necessary*, etc. Now does this section authorize the appointment of a salaried officer with duties entirely distinct from the ordinary force of inspectors, clerks and assistants, or is this power, by every fair intend-ment and rule of construction, limited to the persons

and assistants of the same kind or necessarily connected with the same kind as those specifically enumerated in the first part of the section? We think the rule of construction would limit it to the class specifically enumerated, not only by the rule that limits the general words by the particular words (*State v. Bryant*, 90 Mo. 534; Sutherland on Construction of Statutes, sec. 219, note 4, and authorities cited; Sedgwick on Construction of Stat. & Const. Law, 360, 361), but because the charter expressly confers upon the mayor, the principal executive officer of the city, the power "to appoint all city officers not ordered to be elected by the people or otherwise appointed." Art. 4, sec. 7. To deprive him of this right by the implied repeal of a specific statute or ordinance, the repugnancy of the statute or ordinances ought to be clear and irreconcilable. *City of St. Louis v. Ins Co.*, 47 Mo. 146, and cases cited.

II. But it is argued on the part of the relators that the incumbent of this position, "superintendent of streets," is not an officer, but a mere employe of the board of public works. It seems to us that by all the principal tests he is an officer. If, as we hold, the ordinance of 1888 is not repealed, we think it was clearly within the powers of the common council under both charters to pass that ordinance defining the character and duties of this position. This being so, they have by the ordinance itself denominated the position *an office.* Section 973, Revised Ordinances, 1888, reads, "who *shall hold his office* for the term of one year, and until his successor is duly appointed and qualified." Charter, 1875, art. 4, sec. 14. Again in section 974, it is provided, "it shall be the duty of *such officer*" to superintend, etc.

Not only is he denominated an officer, but public duties, such as usually appertain to public officers as such, are by statute devolved upon him as the incumbent of the position. These duties belong to the position irrespective of who may fill the position. In this

respect certainly the position has all the *indicia* of an office as contradistinguished from a mere employment. Again he was required to give an *official bond* in the sum of $10,000, for the faithful performance of his duties as such, and he has *a fixed and definite term,* to-wit, one year, and was *entitled to the emoluments.*

Chief Justice MARSHALL in *United States v. Maurice,* 2 Brock. 103, used this language: "But if a duty be a continuing one, which is defined by rules prescribed by the .government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station without any contract defining them, if those duties continue, though the person be changed, it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties, from an officer. \And again on page 349: "And we apprehend that it may be stated as universally true, that where an employment or duty is a continuing one, one which is defined by rules prescribed by law and not by contract, such a charge or employment is an office."

In 40 Mich. Rep. Judge COOLEY says: "An office is a special trust or charge created by competent authority. If not merely honorary, certain duties will be connected with it, the performance of which will be the consideration for its being conferred upon a particular individual, who for the time will be the officer. The officer is distinguished from the employe in the greater importance, dignity and independence of his position; in being required to take an official oath and, perhaps, to give an official bond; in the liability to be called to account as a public offender for misfeasance or non-feasance in office, and usually, though not necessarily, in the tenure of his position." *Throop v. Langdon,* 40 Mich. ( 673 ) 682. "A public office is a public trust." Judge COOLEY, Principles Const. Law, 303.

When we consider the importance of the position, the salary attached to it, the certain tenure, the large

bond given to insure the faithful performance of the duties of the position, and the denomination thereof by the city council as such, we have little hesitancy in saying that in our opinion it is a public office, and its rightful incumbent a public officer and not a mere employe of the board of public works. *State ex rel. v. Valle*, 41 Mo. 29.

We may as well remark here now that construing the two charters and ordinances thereunder together it is clear that the superintendent of streets is one and the same officer known as the street commissioner prior to the adoption of the charter of 1889. The mere change of the name of the officer did not affect the office itself. *Sullivan v. Mayor*, 53 N. Y. 652. We hold that ordinance 268 did not repeal sections 973, 974, 975 and 976, but was intended to supplement those sections and adjust the office to the new charter.

This cause has been presented and argued with signal ability on both sides. It is due counsel for relators that we notice some of their positions not already considered.

They insist with much earnestness, that the omission of section 14, of article 4, of the charter of 1875, defining the duties of the city engineer and authorizing the city council to appoint a street commissioner, evinces a clear legislative intent that the office of street commissioner should be abolished. This argument is plausible at first blush, but is not tenable upon closer investigation. "Exclusive control and power over the streets and alleys," is vested in the city council by the charter of 1889. By section 15, article ——, of the new charter, power to create offices is expressly granted to the mayor and council. "There shall also be such other officers, servants and agents of the corporation as may be provided by ordinance, who shall perform such duties as may be prescribed by ordinance." Under a grant as extensive as this, it seems to us there can be no question that ample authority was given the common council to

prescribe the duties of the superintendent of streets named in ordinance number 268, and provide by ordinance for his appointment.

Nor is there that irreconcilable conflict between section 10, of article 6, and sub-section 5, of section 1, article 3, of the new charter, contended for by relators. The mayor and the council are given exclusive control and power to sprinkle, clean and keep in repair the streets, alleys and public grounds. The board of public works is given power to *supervise* the sprinkling and repairing of streets, alleys and public places. These sections, being "*in pari materia*," should, if possible, be construed so as to give meaning and effect to both. We hold it not inconsistent for the mayor and common council to create the office of superintendent of streets or street commissioner, provide for his salary, prescribe the duty on his part of superintending and cleaning and repairing the streets, alleys, etc., under the *supervision* of the board of public works.

It seems clear that the *personnel* of this board ; the requirement that they need only meet once a week at the office of the board ( Charter, 1889, sec. 3, art. 6 ), is inconsistent with that thorough personal superintendence which the ordinance clearly expects of the street commissioner or superintendent of streets. By their wise supervision they might well prevent reckless expenditures in ill-advised directions ; lay out and formulate improvements and cause the same to be done under the immediate superintendence of the superintendent of streets. It is one thing to *supervise his work*, and another and quite a different thing to have the power to appoint or remove him ; one, the board has,—the other, it has not.

The question of practice, whether a *mandamus* proceeding was the proper remedy in this case, has been discussed thoroughly and well. It may be conceded that *mandamus* is not the proper remedy to determine, either directly or indirectly, the title to public office,

The State ex rel. Cannon v. May.

particularly when an office is already filled by an actual incumbent exercising the functions of the office "*de facto*" and under color of right, and that "*quo warranto*" and the statutory contests provided by law in many of the states is the proper remedy in such cases. *State ex rel. Tracy v. Taaffe*, 25 Mo. App. 570; *State ex rel. Jackson v. Auditor*, 36 Mo. 72. It is, however, also well settled that where the relator holds an *uncontested* title to a public office, or his title has been adjudicated and finally established by a competent tribunal, and he is in possession of the office, that *mandamus* will lie to compel the delivery to him of the books and papers belonging to his office by his predecessor in office, who has refused his demand therefor. *State ex rel. v. Trent*, 58 Mo. 571. In this case, the *prima facie* case made by relators was such that we granted the alternative writ, and we have thought best to decide this case upon its merits, having obtained jurisdiction of it, rather than to place our decision upon a question of practice alone.

There are many minor propositions discussed, and have all been considered. But we are all agreed that, whether section 973 and following were repealed by ordinance number 268, it is clear that the position of superintendent of streets therein provided for is an office within the meaning of the law, and that the mayor and not the board of public works has the power of appointment thereto.

Our conclusion is that the peremptory writ be denied, and that respondent go hence without a day, and have and recover of relators, J. S. Cannon, H. C. Murphy, Charles A. Rollert, J. P. Stoller and W. L. Sheppard, the costs of this proceeding, and that he have execution therefor.

MACFARLANE, J., concurs; THOMAS, J., concurs in the result and paragraph 2.