THE STATE EX REL. LOUIS H. HOLLMAN v. ROBERT W. McELHINNEY and J. C. A. HILLER, Election Commissioners of St. Louis County.

Court en Banc, September 13, 1926.

1. **NOMINATING ELECTIONS: Secrecy of Ballots: Constitutional Amendment of 1924: Recount.** Section 3 of the Constitutional Amendment of 1924 relaxed the secrecy of the ballot only in (a) cases of contested elections, (b) grand jury investigations and (c) the trial of all civil or criminal cases in which the violation of any law relating to elections is under investigation or at issue, and in those cases only can the secrecy of the ballot be relaxed. It includes nominating elections, and election contests, but it does not authorize a canvassing board, or other purely ministerial body, upon the mere application of a defeated candidate, to open the ballot boxes, examine and compare the ballots, and recount them.

2. **ELECTION CONTESTS: Judicial Proceeding: Case.** Section 3 of the Constitutional Amendment of 1924, declaring that "in cases of contested elections, . . . including nominating elections" election officers "may be required to testify and the ballots cast be opened, examined, counted, compared with the list of voters and received as evidence," by the words "cases of contested elections" refers to judicial proceedings, and fixes the character of the "contested elections" as those, and those only, commenced and prosecuted in courts of law. The amendment did not change or purport to alter Section 9 of Article 8 of the Constitution which declared that "the trial and determination of contested elections of all public officers, whether state, judicial, municipal or local, except Governor and Lieutenant-Governor, shall be by the courts of law, or by one or more judges thereof." The very word "cases" implies judicial procedure.

3. **NOMINATING ELECTIONS: Canvassing Returns: Invalid Statute.** The Act of 1921, Laws 1921, pages 329, 330, declaring that a canvassing board, within five days after it shall have certified the result of its canvass, upon the application and affidavit of a candidate, who disputes the correctness of the count and return, may order a recount of the ballots cast, and shall have the same authority to determine the legality of the ballots as is possessed by judges of election, and to compare the voters' names on the poll books with the registration lists and to exclude from the count the ballots of persons who are not duly registered, etc., is an unconstitutional law, in that it is an invasion of the constitutional right to a secret ballot, and permits a ministerial board to do things which the Constitution declares can only be done in courts of law.

---

Corpus Juris-Cyc. References: **Actions**, 1 C. J., Section 24, p. 933, n. 68; p. 934, n. 71, 72, 74, 75, 76, 79. **Elections**, 20 C. J., Section 122, p. 119, n. 98; Section 124, p. 120, n. 23.

Prohibition.

PEREMPTORY WRIT ORDERED.

*Henry Kortjohn* for relator.

*Jos. C. McAtee* and *Julian C. Holster, Jr.* for respondents.

ATWOOD, J.—The application and return filed herein show that at the regular primary election held in August, 1926, for the purpose of choosing nominees for office, relator and one Frank G. Weiss each sought the Republican nomination for the office of Constable of Bonhomme Township in St. Louis County, Missouri. At said nominating election relator was declared nominated by a majority of five votes and this result was certified by respondents, constituting the Board of Election Commissioners of said county, on August 11, 1926, pursuant to the provisions of Section 4844, Revised Statutes 1919. On the following day Weiss, who was the only other candidate for said nomination, filed in the office of said Board of Election Commissioners a petition charging fraud, misconduct and irregularities in the count of the ballots and in the returns thereof, and asking for a recount of the ballots cast in all fifteen precincts in said township, said petition being duly verified by the said Weiss and copy thereof being served upon relator herein. On September 2, 1926, respondents met, heard objections urged by relator herein, who appeared in person and by attorney, against the opening and recount of ballots as prayed in said petition, overruled said objections and set September 9, 1926, as the date upon which they would open and commence a recount of said primary ballots. Relator asks us to prohibit said Board of Election Commissioners from opening and recounting said ballots.

Respondents say they are authorized to proceed by an act of the General Assembly found on pages 329, 330, Laws 1921, which provides: ''If at any time within five days after any canvassing board shall certify the result of its canvass, as provided by Section 4844 of the Revised Statutes of Missouri, 1919, any person who was a candidate for any nomination or a candidate for committeeman at said primary election and who desires to challenge the correctness of the count and returns for the office for which he was a candidate, shall file with said canvassing board an affidavit alleging and charging that fraud, misconduct or irregularities in the count of said ballots or in the returns thereof was committed in any one or more of the precincts or voting districts of any city or county in this State at the said primary election, the said canvassing board or any two or more of them may in their discretion order a recount of the ballots cast in any such precincts or voting districts so affected. Such recount shall be held forthwith at the regular meeting place of the canvassing board and said canvassing board in making such recount shall have the same jurisdiction and authority to pass on the form and determine the legality of the ballots as is possessed by judges of election, but shall not have authority to determine the qualification

of voters except that in voting precincts, where the voters are required by law to register, the canvassing board shall compare the voters' names on the poll books with the registration list and no ballots shall be counted except the ballots of persons who are duly registered. And said canvassing board shall order to be brought before it all the ballots, poll books, registration books and statements to the same extent and in like manner as the judges of election had before them in making the count in the precincts.'' The act further provides that four disinterested electors be appointed to assist in the opening and recounting of said ballots, that each candidate for the nomination may be present in person or by representative to witness the recount, that all present shall preserve the secrecy of the ballot, that the canvassing board's certificate of returns on such recount be taken and accepted as the official certificate of said returns, superseding the results included in the previous count and canvass, and that any evidence obtained of fraud or violations of criminal laws shall be presented to the proper authorities in charge of the prosecution thereof.

From respondents' return and the copy of the affidavit and petition thereto attached seeking a recount of the ballots, it appears that the charge of fraud, misconduct and irregularities consists mainly of allegations that the judges and clerks of election in each of said fifteen precincts counted legal and regular ballots against affiant and for his opponent which were cast for affiant; counted irregular and illegal ballots as legal and regular ballots for affiant's opponent; did not count for affiant legal and regular ballots cast for him and omitted same in the return of votes to the Board of Election Commissioners; rejected legal and regular ballots for affiant without any legal reason and excluded them in the returns; and made errors, mistakes and inaccurate returns, and permitted the attendance and participation in the count of unauthorized persons. Presumably the judges and clerks of election upon completing the count and before making their return to the Board of Election Commissioners, closed and sealed the ballots as provided by statute. Manifestly this proceeding contemplates that these seals be broken and the ballots cast in these fifteen precincts ''be opened, examined, counted, compared with the list of voters''—which the Constitution permits to be done only in certain specified instances, as we shall presently see.

Relator affirms that this act is unconstitutional. The first ground of unconstitutionality urged is that Section 3, Article 8, of Constitutional Amendment number 9, adopted February 26, 1924, prohibits the opening of ballot boxes except as therein provided, and that the terms of this 1921 statute do not come within these constitutional provisions. The section reads:

"All elections by the people shall be by ballot. Every ballot voted shall be numbered in the order received and its number recorded by the election officers on the list of voters opposite the name of the voter who presents it. All election officers shall be sworn or affirmed not to disclose how any voter shall have voted: Provided, that in cases of contested elections, grand jury investigations and in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue, such officers may be required to testify and the ballots cast may be opened, examined, counted, compared with the list of voters and received as evidence."

Prior to the adoption of this amendment the Constitution provided for the opening of ballot boxes only in "cases of contested elections." Reading Section 3 of this amendment in the light of the original provision, as judicially construed, it is clear that the section as amended, in the interest of right elections, relaxes the secrecy of the ballot, to the extent indicated in the proviso, in (1) cases of contested elections; (2) grand jury investigations; and (3) the trial of all civil or criminal cases in which the violation of any law relating to elections is under investigation or at issue. We have uniformly held that "election by ballots" means a secret ballot (Ex parte Arnold, 128 Mo. 260, and subsequent cases), and under the familiar rule of construction, *inclusio unius est exclusio alterius*, we must hold that the secrecy of the ballot cannot be otherwise relaxed. [State ex rel. Goldman v. Hiller, 278 S. W. (Mo.) 708.] It is true that in the Goldman case the statute which we held unconstitutional (Laws 1921, p. 365), related to general elections, while the statute now under consideration relates only to primary or nominating elections, and, having said in State ex rel. Feinstein v. Hartmann, 231 S. W. (Mo.) 982, that the term "elections," as used in the Constitution of 1875, did not include within its meaning elections held merely to nominate candidates for office, it necessarily follows that we found in the Constitution of 1875 no guaranty of secrecy of the ballot in nominating elections. However, the proviso of Section 3 of Constitutional Amendment number 9 adopted February 26, 1924, specifies when the veil of secrecy can be lifted as to ballots cast at elections, "including nominating elections," thus clearly indicating that Section 3 as amended and adopted extends the constitutional guaranty of a secret ballot, so that the term "all elections by the people" used in the first sentence of Section 3 now includes nominating elections, and by virtue thereof we are now bound to maintain secrecy of the ballot in nominating elections, except as otherwise provided in the Constitution.

It is obvious that the proceeding here brought to our attention is neither a grand jury investigation nor a trial of a civil or criminal

case in which the violation of any law relating to elections is under
investigation or at issue. It is a summary statutory proceeding, re-
lating to nominating elections, before a purely ministerial body.
Does it come within the present constitutional provision relating to
"cases of contested elections?"

An examination of the Journal of the Constitutional Convention
of Missouri, 1922 (86th day, p. 4), discloses that the words "in cases
of contested elections and" were incorporated by way of an amend-
ment, introduced by Mr. Cunningham, to the report of the Com-
mittee on Suffrage and Elections, and subsequently phrased as it
now appears by the Committee on Phraseology and Arrangement.
It will be observed that the language, "cases of contested elections,"
is also found in the proviso as it stood prior to this amendment. We
do not find that the phrase as a whole has ever been construed, but
the words "contested elections" as used in the old section, were con-
strued by this court in State ex rel. Ewing v. Francis, 88 Mo. l. c.
561, as relating only "to statutory contests in which the contestant
seeks not only to oust the intruder, but to have himself inducted into
the office." It was also ruled that a *quo warranto* proceeding was
not a contested election case within the meaning of the Constitution,
and ballots could not be inspected therein. In State ex rel. Keshlear
v. Slover, 134 Mo. l. c. 15, this court said: "A contested election
is a purely statutory proceeding in Missouri, both as to the tribunal
and the character of the proceeding, and was unknown at common
law." Relator suggests that the words "contested elections" as
they now stand in Section 3 of the constitutional amendment should
be construed to include nominating elections, because the classifica-
tion, civil cases in which the violation of any law relating to elec-
tions is at issue, necessarily includes "cases of contested elections."
Some doubts of such inclusion may have led to the adoption of the
Cunningham amendment, but however this may be, and aside from
any merit that may be in the reason advanced by relator, we hold
that the term "contested elections," as now used in Section 3, includes
all contested elections that come within the class, "cases of contested
elections," as presently defined. It would be entirely inconsistent
with the evident purpose of this amended proviso to withhold its
benefits from such nominating election contests as may come within
one or more of the classifications named.

A study of our legislative and judicial history relating to elec-
tions yields convincing proof that it has not been our public policy
to relax the constitutional guaranty of secrecy of the ballot except
amid the safeguards that surround judicial proceedings. This policy
was clearly reflected in the provisions of the Constitution of 1875,
and in subsequent interpretations thereof. Section 9, Article VIII,
of the Constitution of 1875 was not changed by the amendment of

1924. Its first sentence reads (italics ours): "The trial and deter-
mination of contested elections *of all public officers*, whether State,
judicial, municipal or local, except Governor and Lieutenant-Gov-
ernor, shall be by the courts of law, or by one or more of the judges
thereof." The election of a nominee for a public office is not an
election of a public officer, and it must be conceded that this con-
stitutional provision does not include contested nominating elections.
However, it seems clear to us that the first clause of the proviso in
Section 3, Article VIII, of the Constitution, to-wit, "cases of con-
tested elections," which appears in the Constitution of 1875 and
also in the amendment of 1924, fixes the character of the "contested
elections" there contemplated as those, and those only, commenced
and prosecuted in a court of law. It is a legislative function of the
State to provide for contested elections and say whether they shall be
heard and determined in the courts or elsewhere, but the designation
of a proceeding as a "case" carries a meaning well defined and gen-
erally understood. In Boyd v. Thayer, 143 U. S. l. c. 161, Mr.
Chief Justice FULLER said: "Each State has the power to prescribe
the qualifications of its officers and the manner in which they shall
be chosen, and the title to offices shall be tried, whether in the judicial
courts or otherwise. But when the trial is in the courts, it is 'a
case,' and if a defense is interposed under the Constitution or laws
of the United States, and is overruled, then, as in any other case
decided by the highest court of the State, this court has jurisdiction
by writ of error."

Webster's New International Dictionary defines a "case" as "the
matters of fact or conditions involved in a suit, as distinguished
from the questions of law; a suit or action in law or equity; a cause."

The same word is thus defined in Black's Law Dictionary: "A
general term for an action, cause, suit or controversy, at law or in
equity; a question contested before a court of justice; an aggregate
of facts which furnishes occasion for the exercise of the jurisdiction
of a court of justice."

Also, in Bouvier's Law Dictionary the word, "case" is defined as
"a question contested before a court of justice. An action or suit
at law or in equity."

In accordance with the above definitions, and in line with the oft
expressed sound public policy of this State to surround every relax-
ation of the constitutional secrecy of the ballot with judicial safe-
guards, we hold that a contested nominating election comes within
the class of "cases of contested elections" specified in the proviso
of Section 3, Article VIII, of the Constitution as amended, only when
commenced and prosecuted in a court of law. The act here challenged
by relator (pages 329, 330, Laws 1921) does not so provide, although,
in effect, it assumes to authorize the doing of things permitted only

when the particular instance comes within the terms of the above constitutional proviso, and thus violates the Constitution. We hold the statute invalid on this ground and consider it unnecessary to discuss other grounds urged by relator.

For the reasons above stated it is ordered that our peremptory writ issue herein. All concur, except *Walker* and *Graves, JJ.*, absent.