STATE OF MISSOURI ex inf. ROY MCKITTRICK, Attorney General, Relator, v. IRWIN T. BODE.—113 S. W. (2d) 805.

Court en Banc, February 25, 1938.

*Roy McKittrick,* Attorney General and *Franklin E. Reagan,* Assistant Attorney General, for relator; *James T. Blair, Jr.,* of counsel.

*Williams, Nelson & English* for respondent.

164

GANTT, J.—Original proceeding in *quo wararnto* to oust respondent from the position of Director of Conservation. On the filing of an amended answer, relator moved for judgment.

It is admitted that under Constitutional Amendment No. 4 (Laws of 1937, pp. 614, 615), and on November 15, 1937, the Conservation Commission appointed respondent to the position; that at said time he was a resident but had not resided in the State one year next preceding his appointment; that he accepted the appointment, duly qualified, entered upon the duties of the position, and continues to perform the same.

In this connection it should be stated that Section 10, Article VIII of the Constitution provides that "no person shall be elected or appointed to any office in this state . . . who shall not have resided in this state one year next preceding his election or appointment."

I. Relator contends that the Director of Conservation is a public officer and not a mere employee, and that respondent should be ousted because he had not "resided in this state one year next preceding his appointment."

It is not possible to define the words "public office or public officer." The cases are determined from the particular facts, including a consideration of the intention and subject matter of the enactment of the statute or the adoption of the constitutional provision. In other words, the duties to be performed, the method of performance, end to be attained, depository of the power granted, and the surrounding circumstances must be considered. In determining the question it is not necessary that all criteria be present in all the cases. For instance, tenure, oath, bond, official designation, compensation and dignity of position may be considered. However, they are not conclusive. It should be noted that the courts and text writers agree that a delegation of some part of the sovereign power is an important matter to be considered. The question is considered at length in 46 Corpus Juris, page 924. In determining that a deputy sheriff was a public officer, we stated the rule as follows:

"A public office is defined to be 'the right, authority and duty, created and conferred by law, by which for a given period, either fixed by law or enduring at the pleasure of the creating power, an individual is invested with some portion of the sovereign functions of the government, to be exercised by him for the benefit of the public.' [Mechem, Pub. Offices, 1.] The individual who is invested with the authority and is required to perform the duties is a public officer.

"The courts have undertaken to give definitions in many cases, and while these have been controlled more or less by laws of the particular jurisdictions, and the powers conferred and duties enjoined thereunder, still all agree substantially that if an officer receives his authority from the law and discharges some of the func-

tions of government he will be a public officer. [State v. Valle, 41 Mo.. 30; People ex rel. v. Langdon, 40 Mich. 673; Rowland v. Mayor, 83 N. Y. 376; State ex rel. v. May, 106 Mo. 488.]

"Deputy sheriffs are appointed by the sheriff, subject to the approval of the judge of the circuit courts; they are required to take the oath of office, which is to be indorsed upon the appointment and filed in the office of the clerk of the circuit court. After appointment and qualifications they 'shall possess all the powers and may perform any of the duties prescribed by law to be performed by the sheriff.' [R. S. 1889, secs. 8181 and 8182.]

"The right, authority and duty are thus created by statute; he is invested with some portions of the sovereign functions of the government to be exercised for the benefit of the public and is, consequently, a public officer within any definition given by the courts or text writers.

"It can make no difference that the appointment is made by the sheriff, or that it is in the nature of an employment, or that the compensation may be fixed by contract. The power of appointment comes from the State, the authority is derived from the law, and the duties are exercised for the benefit of the public. Chief Justice MARSHALL defines a public office to be 'a public charge or employment.' [U. S. v. Maurice, 2 Brock, 96.] Whether a public employment constitutes the employee a public officer depends upon the source of the powers and the character of the duties.

"The Constitution requires 'all officers both civil and military, under authority of this state' before entering on the duties of their office, to take and subscribe a prescribed oath." [State ex rel. v. Bus, 135 Mo. 325, l. c. 331, 332, 333, 36 S. W. 636.]

The constitutional amendment in part follows:

"Conservation Commission created.—The control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wild life resources of the State, including hatcheries, sanctuaries, refuges, reservations and all other property now owned or used for said purposes or hereafter acquired for said purposes and the acquisition and establishment of the same, and the administration of the laws now or hereafter pertaining thereto, shall be vested in a commission to be known as the Conservation Commission, to consist of four members to be appointed by the Governor, not more than two of whom shall be members of the same political party. The commissioners shall have knowledge of and interest in wild life conservation. . . . The members of said Commission shall receive no salary or other compensation for their services as such. The members of the Commission shall receive their necessary traveling and other expenses incurred while actually engaged in the discharge of their official duties."

Thus it appears that the commissioners are in general control of conservation without compensation. It is clear that it was not intended for them to devote all of their time to conservation, for they are authorized to appoint a director. They duly considered his necessary qualifications and determined that he should be a man technically trained in:

"(1) research work, including scientific investigation of the causes of the decrease of wild life and the means by which wild life might be restored;

"(2) the science of propagation of game and fish and in the conservation and restoration of forests;

"(3) the field of law enforcement as applied to laws affecting the regulation of bird, fish, game, forestry and wild life resources;

"(4) conducting the activity of public relations with reference to education in wild life conservation;

"(5) and sufficiently trained in the technical phrases of the various activities of the Commission to enable him to advise the Commission concerning such activities and further to enable him to recommend to the Commission for its approval the employment of staff members and other employees qualified to carry out their respective duties in the performance of said activities."

After fixing said qualifications, the commission appointed respondent to the position. The power to appoint a director "comes from the State, the authority is derived from the law, and the duties of the position are exercised for the benefit of the public." [State ex rel. v. Bus, supra.] Furthermore, the word "director" is defined as follows:

"One who, or that which directs." [18 C. J. 1046.]

"One who directs; one who regulates, guides or orders; a manager or superintendent." [Webster's New International Dictionary.]

"One who, or that which directs; exp., a chief administrative official." [1 New Century Dictionary.]

It would not be possible for respondent to direct, regulate, guide, manage and superintend the matter of conservation without exercising some part of the sovereign power. Indeed, he is the chief administrator of all conservation matters. It follows that respondent, as director of conservation, is a public officer.

II. Relator next contends that the conservation amendment did not limit the residential requirement of one year, as provided in Section 10, Article VIII of the Constitution, and for that reason respondent was not eligible for appointment to the office.

The question presented must be ruled from a consideration of the paragraph of the amendment, which follows:

"A Director of Conservation shall be appointed by the Commission and such director shall, with the approval of the Commission, appoint such assistants and other employees as the Commission may deem necessary. *The Commission shall determine the qualifications of the director, all assistants and employees and shall fix all salaries, except that no commissioner shall be eligible for such appointment or employment.*" (Italics ours.)

Relator does not contend that the paragraph presents an ambiguity, and it is admitted that the word "determine," as commonly used, means to conclude, settle, decide and fix. If so, the paragraph, standing alone, authorizes the commission to settle the necessary qualifications of a director. We do not understand the relator to otherwise contend. He argues only that the paragraph should be harmonized with Section 10, Article VIII (which requires a residence of one year) by interpolating after the word "determine" in said paragraph the words "subject to the provisions of Section 10, Article VIII." We are familiar with the rule that the provisions of the Constitution should be harmonized. However, if said paragraph is unambiguous and in direct conflict with Section 10, "the amendment must prevail because it is the latest expression of the will of the people." In other words, we are without authority, absent an ambiguity, to resort to interpolation. In this situation "the rule as to harmonizing inconsistent provisions" is without application. The rule is stated as follows:

"Many troublesome questions of constitutional construction arise in the interpretation of constitutional amendments with reference to the earlier constitutional provisions to which they have been added. In accordance with the general rule that harmony in constitutional construction should prevail whenever possible, generally an amended Constitution must be read as a whole, as if every part of it had been adopted at the same time and as one law. A new constitutional provision adopted by a people already having well-defined institutions and systems of law should not be construed as intended to abolish the former system, except in so far as the old order is in manifest repugnance to the new Constitution, but such a provision should be read in the light of the former law and existing system. Amendments, however, are usually adopted for the express purpose of making changes in the existing system. Hence it is very likely that conflict may arise between an amendment and portions of a Constitution adopted at an earlier time. In such a case the rule is firmly established that an amendment duly adopted is a part of the Constitution and is to be construed accordingly. It cannot be questioned on the ground that it conflicts with pre-existing provisions. If there is a real inconsistency, the amendment must prevail because it is the latest expression of the will of the people. In such a

case there is no room for the application of the rule as to harmoniz-. ing inconsistent provisions. If it covers the same subject as was covered by a previously existing constitutional provision, thereby indicating an intent to substitute it in lieu of the original, the doctrine of implied repeal, though not favored, will be applied and the original provision deemed superceded." [11 Am. Jur., sec. 54, pp. 663, 664.]

Furthermore, the paragraph contains a limitation as follows:

"The commission shall determine the qualifications . . . except that no commissioner shall be eligible for such appointment or employment."

If construction were necessary, this limitation would tend to show that other limitations were not intended. [State ex rel. Goldman v. Heller, 278 S. W. 708, 709; State ex rel. v. McElhinney, 315 Mo. 731, 286 S. W. 951, 952; State ex rel. v. Sullivan, 283 Mo. 546, ·224 S. W. 327, 335.]

The paragraph under consideration and said Section 10 are in direct conflict, and said paragraph is a limitation on Section 10 to the extent of authorizing the commission to determine the necessary qualifications of a director.

Relator cites State ex rel. Gordon v. Becker, 329 Mo. 1053, 49 S. W. (2d) 146. In that case the question was presented as to whether the initiative and referendum amendment withdrew from the Governor, Secretary of State and Attorney General the power to redistrict the State for senators. We ruled that the amendment withdrew said power for the reason said officials acted under a grant rather than a limitation. The case presented no question of conflict between an amendment and a portion of the Constitution. It is without application.

The writ should be denied. It is so ordered.

*Hays, C. J., Frank* and *Douglas, JJ.,* concur; *Ellison, J.,* concurs in the result in separate opinion in which *Leedy* and *Tipton, JJ.,* concur.

ELLISON, J. (concurring).—I dissent from the holding of the principal opinion that the Conservation Commission amendment to the State Constitution, Laws 1937, pages 614, 615, in providing for the appointment of a Director of Conservation creates a new kind of officer in this State who is exempt from all the other provisions of the Constitution with respect to officers under the State. The opinion holds the Director of Conservation is a public officer but that he is not subject to the requirements of Article VIII, Section 10 of the Constitution, which declares "No person shall be elected or appointed to any office in this state, civil or military; who is not a citizen of the United States, and who shall not have resided in this state one

year next preceding his election or appointment." The reason given is that the constitutional amendment aforesaid provides the Conservation Commission "shall determine the qualifications of the director, all assistants and employees and shall fix all salaries, except that no commissioner shall be eligible for such appointment or employment."

If the director *is* an officer and yet is exempt from the requirements of Article VIII, Section 10, aforesaid, then by the same token the commission without let or hindrance can appoint as director not only an alien, or a person who has not resided in the State for a year, but may also appoint a member of the General Assembly during his term of office in violation of Article IV, Section 12; or a Federal officeholder, overriding Article XIV, Section 4; or an impeached State officer contrary to Article VII, Section 2; or a duelist, notwithstanding Article XIV, Section 3; or a public defaulter, rendered ineligible by Article II, Section 19. Neither would it be necessary that the incumbent take the oath to support the Constitution of the United States and of this State, and to demean himself faithfully in office, as prescribed by Article XIV, Section 6.

It is our view that the Director of Conservation is not a public officer. The constitutional amendment does not fix any term of office, prescribe any duties, fix any salary, require any oath or bond, or directly vest the director with any of the indicia of office. He has no independent public duties or authority, State ex rel. Pickett v. Truman, 333 Mo. 1018, 1022, 64 S. W. (2d) 105, 106 (2). Whatever he does is subject to the approval of and as manager or director for the commission. It is evident that the amendment contemplates the Director of Conservation shall be an expert learned in the control, management, restoration, conservation and regulation of the bird, fish, game, forestry and all wild life resources of the State. Under the amendment the commission could appoint as director an expert in forestry for a brief time, discharge him and appoint another learned in some other field. The position of director is more analogous to that of the president of our State University appointed by the Board of Curators or the president of one of our State Teachers Colleges appointed by the Board of Regents.

In our opinion it is possible to harmonize the conservation amendment with the other sections of the Constitution above referred to. The members of the Conservation Commission undoubtedly are public officers, and the Governor would have no power to put upon the commission any one banned by any of the several sections of the Constitution above mentioned. But the director is their supervisor, or, as the amendment itself says, their "Director." When the amendment says they shall determine his qualifications it means his qualifications for the kind of work he is to do under the commission

within the particular field of its authority. He is not a public officer and for that reason in our opinion the commission may properly appoint to that position a man who does not come within the requirements of Article VIII, Section 10 of the Constitution. We therefore concur in the result only. *Tipton* and *Leedy, JJ.*, concur.