DOOLEY, Appellant, v. JACKSON, Respondent.

St. Louis Court of Appeals, January 19, 1904.

1. **ELECTION: Wager: Stakeholder's Liability: Statutory Lia-bility.** The word "election" as used in sections 3430 and 3431, Revised Statutes of 1899, means an election under the Consti-tution, of persons for public office; these sections do not apply to primary elections for the purpose of nominating can-didates for public office, and do not authorize the recovery from the stakeholder of the wager placed in his hands on such pri-mary election.

2. ————: ————: ————: **Common Law Liability.** A wager on the result of a primary election is illegal at common law, but one who makes such a wager and places his money in the hands of the stakeholder can not recover it, unless he notifies the stakeholder, before the result of the election has been as-certained, not to pay the money over.

Appeal from Monroe Circuit Court.—*Hon. David H. Eby*, Judge.

Affirmed.

*W. E. Whitecotton, G. W. Whitecotton*, and *E. W. Majors* for appellant.

(1) Sections 7082, 7083 and 7127 and other sec-tions of the Revised Statutes of the State of Missouri for 1899, define, recognize and authorize the holding of primary elections such as was held in Monroe county, Missouri, on the twenty-ninth day of March 1902. Chap-ter thirty-two (32), of the said revised statutes, entitled "Gaming," is not only directed against losses at games

and by gambling devices, but section 3430 of said chapter declares, ''Bets and wagers on any election authorized by the Constitution and laws of this State are gambling within the meaning of this chapter.'' The intent is as much a part of the law as the letter of the law. State ex rel. v. Kramer, 150 Mo. 89; State ex rel. v. Rodecker, 145 Mo. 450; Schawacker v. McLaughlin, 139 Mo. 333; Heman v. McNamara, 77 Mo. App. 1. (2) The fact that this was a bet or wager as stated and that the respondent as a stakeholder had notice while the money was still in his hands as such and yet *in transitu,* and that he knew it was a bet or wager fixed his liability; and when he turned the money over to Mudd thereafter, he did so at his peril and must respond to this appellant. Vandolah v. McKee, 73 S. W. 233; White v. Gilleland, 93 Mo. App. 310; Weaver v. Harlan, 48 Mo. App. 319; Hickerson v. Benson, 8 Mo. 8. (3) As long as the money remained in Jackson's hands and he had notice from Dooley not to pay over to Mudd, the question of whether or not the event was known or had been determined was not material; and respondent became liable to the appellant when he turned the money over to Mudd, after he had received the notice, irrespective of the fact whether the event at the time of the service of the notice or prior thereto was known or had been determined.

*J. H. Whitecotton, Bodine & Reynolds, W. T. Ragland* for respondent.

(1) The petition does not state a cause of action within the terms of the statute. If drawn for that purpose it is insufficient. The petition alleges that the bet or wager was on a primary election, ''which said primary election was duly authorized by the laws of the State of Missouri.'' Bets and wagers coming within the terms of the statute are on any election authorized by the Constitution and laws of this State. ''In stat-

utory actions of this sort, the party suing must bring himself strictly within the statutory requirements necessary to confer the right, and this must appear in his petition; otherwise it shows no cause of action." Barker v. Railroad, 91 Mo. 86; McNamara v. Slavens, 76 Mo. 329; Dulaney v. Railroad, 21 Mo. App. 597; Sparks v. Railroad, 31 Mo. App. 114; Ryan v. Judy, 7 Mo. App. 14; Connor v. Black, 132 Mo. 50; Sybert v. Jones, 19 Mo. 86; Cutshall v. McGowan, 73 S. W. 933. (2) In the interpretation of the gaming statute we are not at liberty to "hunt for some intention founded on the general policy of the law." The Supreme and other appellate courts of this State have consistently applied what may be termed the rule of strict construction to this and analogous statutory actions. Hickerson v. Benson, 8 Mo. 8; Crawford v. Spencer, 92 Mo. l. c. 507-508. (3) Again, the Supreme Court has laid down another rule for the interpretation of this act, viz: That it is in aid of the criminal law and must be construed in the same way. The gaming statute and the sections of the criminal code denouncing the same transactions are *in pari materia*. The rule of strict construction has been applied to similar statutes in other states. Commonwealth v. Wells, 17 W. N. C. (Pa.) 164; Commonwealth v. Howe, 144 Mass. 144. (4) Lastly appellant contends that he is entitled to recover in this case under the common law. That the event which was to determine the wager had not happened, and the result was not known at the time he notified respondent stakeholder not to pay over the wager. That the event was not determined until the Democratic central committee officially announced the result of the election, etc. The evidence is undisputed, however, that the results of the primary were unofficially known to the public at large at least two days before appellant made his "demand" of the stakeholder for a return of the wager, or gave him any notice of his intention to repudiate the bet. Humphreys v. McGee, 13 Mo. 435.

Dooley v. Jackson.

BLAND, P. J.—The petition, omitting caption, is as follows:

"Plaintiff for cause of action against defendant states that heretofore, to-wit: on the 26th day of March, 1902, in the county of Monroe and State of Missouri, said plaintiff and one Hugh Mudd made and entered into a wager or bet on the late Democratic primary election then pending, said election being held on the 29th day of March, 1902, which said primary election was duly authorized by the laws of the State of Missouri, the same having been ordered by the duly elected, qualified and acting Democratic central committee in and for the said county of Monroe for the purpose of nominating candidates for the various offices in said county, to be voted on at the next regular election in November, in and for the State of Missouri.

"Plaintiff states that he bet or wagered five hundred dollars that one Nathan Rogers, who was then a candidate for the nomination at said primary election to the office of collector of said Monroe county, would get more votes at said primary election than one Thomas Yates who was also a candidate for the nomination to the office of collector in said county; that said Hugh Mudd bet or wagered the same amount, to-wit: five hundred dollars, that said Thomas Yates would get more votes at said primary election than said Nathan Rogers.

"That plaintiff placed the sum of money so bet or wagered by him, to-wit: the sum of five hundred dollars in lawful money of the United States, in the hands of the defendant, W. R. P. Jackson, as stakeholder, to abide the result of said primary election; that said defendant well knew that the money so placed in his hands by this plaintiff was bet or wagered by plaintiff that said Nathan Rogers would get more votes at said primary election than said Thomas Yates.

"That afterwards, to-wit: on the 31st day of March, 1902, and while such sum of money so bet or wagered was still in the hands of the defendant, W. R. P. Jackson

and not paid over by him to the other party to such bet or wager, and before the expiration of the time agreed upon by the parties for the determination of said bet or wager, the plaintiff demanded the return of said sum of money so bet or wagered and placed in the hands of defendant herein as such stakeholder, and the defendant herein refused to return the said sum so bet or wagered or any part thereof to this plaintiff, whereby a right of action accrued to this plaintiff according to the statutes of this State in such cases made and provided.

"Wherefore plaintiff prays judgment against defendant herein, for the said sum of five hundred dollars, together with interest thereon from the said 31st day of March, 1902, together with the costs of this suit."

There is no controversy about the facts. Briefly stated they are as follows: Nathan Rogers and Timothy Yates were opposing candidates before the primary election to be held by the Democratic party of Monroe county for nomination to the office of collector for said county to be voted at the election in November, 1902. Dooley, the plaintiff, and H. B. Mudd made a bet on the result of the vote to be cast at the Democratic primary election between Rogers and Yates, and executed the following memorandum of their bet:

"Paris, Mo., March 21, 1902.

"This is to certify that we have made a bet as follows: A. G. Dooley bets H. B. Mudd five hundred dollars that Nathan Rogers will get more votes in the Democratic primary in Monroe county for collector than Thomas Yates and have placed twenty-five each as forfeit.

"H. B. MUDD,
"A. G. DOOLEY."

They agreed upon the defendant as stakeholder and delivered to him the above memorandum and each put into his hands a stake of five hundred dollars, with the understanding that he should pay the same to the win-

ner of the bet. The county executive committee of the Democratic party of Monroe county had called a primary election to be held in each school district of the county on the twenty-ninth day of March, 1902, for the purpose of nominating candidates of the Democratic party for county officers of Monroe county, including the office of collector, and formulated rules and regulations for holding said primary. On the day designated by the committee the primary election was held and the poll books of the election were returned to the Democratic central committee which had adjourned on March 29th to meet on April 5, 1902. The committee met on April fifth pursuant to adjournment and canvassed the vote cast at the primary election. By the canvass it was shown that Rogers had received six hundred and forty-four votes and Yates seven hundred and twenty-two. It appears that before the canvass was made it was generally known throughout the county that Yates had received more votes than Rogers, and on the third day of April defendant handed over to H. B. Mudd the stake, to-wit, one thousand dollars, which he held as stakeholder. On the previous day (April 2d) plaintiff served on the defendant the following written notice by delivering or causing to be delivered to him copy of the same, to-wit:

"To W. R. P. Jackson,
        "Monroe City, Mo.
    "You are hereby notified not to pay over to Hugh Mudd or any one else, any monies, held by you as stakeholder, bet by me with Hugh Mudd, on the results of the vote at the primary election as to the candidacy of Nathan Rogers and Thos. Yates for collector of Monroe county, Missouri, said primary election having been held on March 29th, 1902. This 2nd day of April, 1902.
                    "A. G. DOOLEY."

Within three months after defendant handed the stake over to Mudd, the petition in this cause was filed in

the office of the circuit clerk of Monroe county and the summons issued thereon was duly served on defendant.

The plaintiff moved the court to instruct the jury as follows:

"1.    The court instructs the jury that under the law and the evidence your verdict must be for the plaintiff.

"2.    The court instructs the jury that if you find from the evidence in the case that the plaintiff on or about March 21st, 1902, entered into a bet or wager in Monroe county, Missouri, on the Democratic primary election, if any, then pending, and to be held in said county and State, and which was held in said county and State on March 29, 1902, if the jury so find, the plaintiff betting one Hugh B. Mudd the sum of five hundred dollars that one Nathan Rogers would, at said election, get more votes for the nomination to the office of collector of the county of Monroe and State of Missouri, than one Thomas Yates, and Hugh B. Mudd betting plaintiff the sum of five hundred dollars that the said Nathan Rogers would not at said primary election get more votes for the nomination to the office of collector of the county of Monroe, and State of Missouri, than Thomas Yates, if the jury so find; and that said sums so bet or wagered, if any, were by said plaintiff and Hugh B. Mudd put into the hands of defendant Jackson, as stakeholder, to abide the result of the vote cast at the said primary election for the said Nathan Rogers and Thomas Yates for the nomination to the office of collector of said county and State as aforesaid, and that defendant knew that said sums were staked as a bet or wager on said primary election, and knew that fact, if any, at any time prior to his paying said sum over to said Mudd.

"And if the jury further find from the greater weight of the evidence in the cause, that the plaintiff notified the defendant not to pay over to the said Hugh

B. Mudd the sum of money so bet by plaintiff, before the defendant Jackson paid said sum over to the said Hugh B. Mudd, then your verdict must be for the plaintiff.''

The court refused these instructions and the cause was submitted to the jury without any instructions. The verdict was for the defendant. A motion for new trial proving of no avail, plaintiff brings his case here by appeal.

Section 3430, R. S. 1899, declares: ''Bets and wagers on any election authorized by the Constitution and laws of this State are gaming within the meaning of this chapter'' (chapter 32). The next succeeding section (3431) reads as follows:

''Every stakeholder who shall knowingly receive any money or property, staked upon any betting declared gaming by the foregoing provisions, shall be liable to the party who placed such money or property in his hands, both before and after the determination of such bet; and the delivery of the money or property to the winner shall be no defense to any action brought by the losing party for the recovery thereof; *Provided,* that no stakeholder shall be liable afterwards unless a demand has been made of such stakeholder for the money or property in his possession, previous to the expiration of the time agreed upon by the parties for the determination of the bet or wager.''

As originally enacted (Session Acts of 1840-41) the statute declared it to be ''gaming to bet or wager any money, etc., on the result of any election or any vote to be given at such election authorized by the Constitution or laws of the State.'' In the revision of 1855 and in all subsequent revisions the section reads as at present. If the primary election upon which the bet was made was an election within the meaning of section 3430, supra, and was authorized by the Constitution and laws of this State, the bet was gaming within the meaning of section 3430, supra, and plaintiff was entitled to the

peremptory instruction asked by him directing the jury to find the verdict in his favor.

Section 7081, R. S. 1899, authorizes the nomination of candidates for office by a political party at a primary election if the party at the previous general election cast at least three per cent of the vote of the county. Section 7082 defines a primary election to be an "election held within the State, county, district or subdivision thereof by the members of any political party for the purpose of nominating candidates for office." Section 7803 provides that the certificate of nomination to office, when made by a primary election shall be signed by the presiding officer and secretary of the political committee under whose directions the primary was held. Section 7088 defines what is a central political committee and its powers to make nominations to fill vacancies. Section 7127 requires that the judges and clerks of any primary election held for the purpose of nominating candidates shall before entering upon their duties take and subscribe the oath prescribed by law for judges and clerks of election. Section 7128 prescribes the penalty for illegal voting at primary elections, and section 7130 prescribes the penalty for making fraudulent returns of a primary election by the judges, clerks or tellers thereof. The certificate of nomination provided for by section 7083 is under the statute made an official document and evidence of the nomination of the person named in the certificate and the filing of this certificate with the county clerk of the county in which the primary is held authorizes and requires him to enter the name of the person therein named as nominated upon the poll books and to have his name printed on the official ballot.

The legislation above referred to makes it plain that primary elections are authorized by the laws of the State. But to constitute the offense of gaming on the result of an election, the election must have been such a one as is mentioned in the statute, that is, it must have

been authorized by both the Constitution and laws of the State and come within the meaning of the term "election" as used in the statute. At first blush it might seem that an act of the Legislature is authorized by the Constitution if it is a valid act. But a State Legislature, unlike the National Congress, has full legislative power wherever it is not restrained by the Constitution; whereas Congress has power only when it is granted by the Constitution. Hence, the Legislature does not need express constitutional authority to legislate on a subject, but only lack of a constitutional prohibition. "Authority" given by the Constitution to pass a law means, therefore, more than that there is no restriction against passing a law; it means a positive constitutional direction in regard to it. It follows that the Constitution of the State does not authorize the passage of an act regarding primary elections, although such an act of the Legislature is valid for it is not prohibited by the Constitution. The word "election" frequently occurs in the Constitution of the State. First, in section 9, article 2, and article 8 of that instrument is wholly devoted to the subject of elections. But wherever used in the Constitution it is used in the sense of choosing a person or persons for office by vote, and nowhere in the sense of nominating a candidate for an office by a political party. "Where a word is used in a certain or restricted sense in the Constitution and the Legislature uses the same word without restriction or qualification in an act in respect to the same subject-matter the word in the statute should receive the same interpretation that the Constitution has given it." Mayor of Valverde v. Shattuck, 41 Am. St. Rep. 1. c. 215; Commonwealth v. Kirk, 4 B. Mon. 1. c. 2. "All acts which relate to the same subject, notwithstanding some of them may. be expired or are not referred to, must be taken to be one system and construed consistently," said Lord MANSFIELD in Rex v. Loxdale, 1 Burr. 447. "Where in the body of the laws of the State, words

are used in a particular meaning, such words when used in a subsequent statute are to be understood in the same sense.'' Collins v. Wilhoit, 35 Mo. App. 585; Dawson v. Dawson, 23 Mo. App. 169. In State ex rel. v. McGowan, 138 Mo. 187, it is said: ''The words of a statute must be so limited as to be in harmony with the Constitution.''

''A legislative act is always to be considered with reference to the pre-existing body of law to which it is added and of which it is thenceforth to form a part. . . . Hence arises the rule that in case of doubt or ambiguity the statute is to be construed as to be consistent with itself throughout its extent and so as to harmonize with the other laws relating to the same kindred matters,'' says Black on Interpretation of Laws, p. 60.

A Pennsylvania Act, approved July 2, 1839, relating to elections declared that ''any person who shall make a bet or wager or shall offer to make a bet or wager, or shall challenge or invite any person to make a bet or wager, upon the result of any election within the commonwealth, upon conviction thereof shall forfeit and pay three times the amount so bet or offered to be bet,'' etc. It has been the custom in that State for many years for members of the Democratic party in Greene county to hold primary elections to nominate candidates to be voted for at the next general election. On May 27, 1882, Ross, Brant and Patton were candidates for nomination in Greene county for the office of State senator and as such were voted for at a primary election by the qualified voters of the Democratic party. Rinehart and Cole, both qualified voters of Greene county, wagered or bet $200 on the result of the election between Brant, Patton and Ross, and placed the money so bet in the hands of William Wells. In a suit by the commonwealth against Wells to recover the penalty provided for by the Act of July 2, 1839, it was held that the words, ''any election within the commonwealth,''

as used in said act, applied only to the election of public officers and that Wells was not liable for the penalty. Commonwealth v. Wells, 110 Pa. St. 463.

Section 182, of the criminal code of Nebraska, provided that ''any person who shall have voted in any precinct, or in any ward of any city in this State in which he is not actually a resident ten days or such length of time as required by law next preceding the election or into which he shall have come for temporary purposes shall be fined in a sum not exceeding $500 nor less than $50, or be imprisoned in the jail of the proper county for not more than six months.''

In State of Nebraska v. Chichester, 11 L. R. A. 104, it was held that the defendant was not amenable to the penalties of section 182 for having unlawfully voted at a village election, for the reason that such elections were not specifically mentioned in the section and that the word ''precinct'' did not include village.

It is a universal rule in English and American jurisprudence that penal statutes are to be strictly construed and not extended by implication, intendments, analogies, or equitable considerations. Black on Interpretations of Laws, p. 286; Sutherland on Statutory Construction, sec. 208; Sedgwick on the Construction of Statutory and Constitutional Law (2 Ed.), p. 281; City of St. Louis v. Goebel, 32 Mo. 295; Rozelle v. Harmon, 103 Mo. 339; Mellor v. Railway, 105 Mo. 459; St. Charles v. Hackman, 133 Mo. 634; State v. Reid, 125 Mo. 43; State v. Schuchmann, 133 Mo. 111; Vegelsmeier v. Prendergast, 137 Mo. 286; State ex inf. v. Bland, 144 Mo. 1. c. 555. If there be any doubt whether a statute embraces the offense, the doubt is to be resolved in favor of the accused. 1 Bishop on Criminal Law, secs. 134-5; United States v. Morris, 14 Pet. 464; United States v. Sheldon, 15 Wheat. 119.

The word ''election'' as used in the Constitution is used in a restricted and political sense and means the

election of political officers (Mayor of Valverde v. Shattuck, supra). In Commonwealth v. Kirk, supra, an election was defined as the vote or the taking of the vote of the citizens from members to represent them in the General Assembly or other political stations.

The lexicographers define election as follows:

"The act of choosing a person to fill an office as by a ballot, unlifted hands, *viva voce;* as the election of a president or a mayor."—Webster.

"The act or process of choosing a person or persons for office by vote; a polling for office; also the occasion or set time and provision for making such choice; as a general or special election."—Century Dictionary.

"The act of electing, choosing or selecting out of a number by vote for appointment to any office or employment."—American Encyclopedia Dictionary.

Anderson's Law Dictionary says that in its constitutional sense it means "a selection by popular voice of district, county, town or city, or by some organized body in contradistinction to appointment by some single person or officer."

Bouvier's Law Dictionary defines it to be: "The choice, selection of one person from a special class to discharge certain duties in a State, corporation or city."

We think it is clear that the word "election" as used in the statute is used in its political sense and in the same sense in which it is used in the Constitution and means an election for public office and does not include a primary election for the purpose of nominating a candidate for public office, and also that a primary election is not an election authorized by the Constitution.

2. Plaintiff contends that if not entitled to recover on the statute he is entitled to recover at common law. A wager on the result of an election is illegal at common law because against public policy, but when the losing

party to the illegal contract remains silent until the contract is executed by the determination of the result upon which the wager was made, he can not recover his part of the stake. Hickerson v. Benson & Workman, 8 Mo. 8; Humphreys v. Magee, 13 Mo. 435; Cutshall v. McGowan, 73 S. W. (Mo. App.) 933. The uncontradicted evidence is that, notwithstanding the central-committee had not met and canvassed the vote on which the wager was made, yet prior to the service on defendant of the notice (set out in the statement) not to pay the stake to Mudd, the result of that election had been ascertained and was well known, and was known to the parties to this suit. This state of the evidence shows that plaintiff put off the day of repentance until the common law closed the door of hope against him.

The judgment is affirmed. *Reyburn* and *Goode*, *JJ.*, concur.