THE STATE ex rel. THOMAS P. MURPHY v. FRANK LANDWEHR, Judge of Circuit Court.

Division Two, October 29, 1921.

1. **BALLOTS AND POLL BOOKS: Use by Grand Jury: Forbidden by Statute.** A subpoena *duces tecum* directed to the Board of Election Commissioners of the City of St. Louis, commanding them to bring before the grand jury "the ballot boxes, ballots and the official returns and statements made by the judges and clerks of election" of a certain precinct in connection with a primary election is prohibited by Section 5403, Revised Statutes 1919, prohibiting the use of such ballots if the use thereof will "tend toward showing who voted any ballot;" for the use of the ballots in connection with the poll books would enable at least the members of the grand jury and all other persons legally present to ascertain how each voter had voted.

2. ————: ————: **Certificate to Poll Book.** The poll books made by the judges and clerks of election at a primary election, if they are produced before the grand jury, must be presented as a whole, including the certificate on the back page thereof, which cannot be reserved from the book, by the court or the election commissioners, and to produce the certificate is to produce the poll book itself before the grand jury and its legal attendants, and that would be to violate Section 5403, Revised Statutes 1919, which declares that, in an investigation before a grand jury, "the ballots be in no way used or any information disclosed that would tend toward showing who voted any ballot." [DAVID E. BLAIR, J., concurring for the reason that State ex rel. v. Hartmann, 231 S. W., 982, decided by Court in Banc, is controlling in this case, the facts not being distinguishable from those in judgment there.]

## Prohibition.

PRELIMINARY WRIT MADE ABSOLUTE.

*Wifley, Williams, McIntyre, Hensley & Nelson* for relator.

(1)  Sec. 5403, R. S. 1919, determines the power and jurisdiction of respondent in the instant case.  State ex rel. Feinstein v. Hartmann, 231 S. W. 982.  (2)  Said statute by express proviso declares "that the ballots in no way be used or any information disclosed that would tend toward showing who voted any ballot."  The phrase "tend toward showing" as used in the above statute has a clear and unambiguous meaning.  Definition of word "tend": Webster's New International Dictionary; 9 Century Dict. and Cyc. p. 6228; 38 Cyc. 125; White v. State, 153 Ind. 692; Hogue v. State, 93 Ark. 322; Ex parte Gauss, 223 Mo. 277, 284; 3 Wigmore on Evidence, sec. 2260.  (3)  The application for subpoena *duces tecum* calls for all the statements and official returns made by the judges and clerks of election in connection with said primary election.  One of these statements or returns is attached to the poll book and cannot be produced without also producing the poll book. (4)  The application for subpoena *duces tecum* is under the authorities too indefinite and uncertain to confer jurisdiction upon the circuit court to issue the writ of subpoena *duces tecum*.  State ex rel. Wurdeman, 175 Mo. App. 540; Ex parte Brown, 72 Mo. 83.

*Jesse W. Barrett,* Attorney-General, and *Merrill E. Otis,* Assistant Attorney-General, for respondent; *Howard Sidener,* Circuit Attorney, and *Roland Johnston,* Assistant Circuit Attorney, of counsel.

(1)  There is no constitutional guaranty of secrecy as to ballots cast in primary elections in this State.  State ex rel. Feinstein v. Hartmann, 231 S. W. 982; In re Kan-

sas City Election Commissioners,—Mo.—. (2) The prohibition against the production before grand juries of primary election ballots, orginally a part of the primary laws, being therein incorporated by reference, was stricken from those laws by the amendment to the law of evidence now known as Sec. 5403, R. S. 1919. State ex rel. Feinstein v. Hartmann, 231 S. W. 982. (3) Sec. 5403, R. S. 1919, authorzies the production of primary election ballots tò be used in grand jury investigations. State ex rel. Feinstein v. Hartmann, 231 S. W. 982. (4) The proviso in Sec. 5403, R. S. 1919, relied on by relator, is a limitation, not upon the right to require the production of ballots, but solely upon the use to which they may be put, after they have been produced. The proviso assumes that they have been produced. If the proviso is construed as contended for by relator the section is meaningless. The court will presume that the Legislature did not intend to enact a statute without meaning. (5) The true meaning of the proviso is that the ballots shall not be used so as to show at the investigation or hearing who voted any ballot. (6) Inspection of the ballots alone cannot "tend to show" who voted them. In addition there must be access to the poll books. The law forbids that access. The situation is just as if the poll books did not exist. Sec. 5258, R. S. 1919. (7) The law defines what is meant by "statements and returns" as that phrase is used in the application for a subpoena *duces tecum.* The term does not include the "certificate" contained in the poll book and set out in the agreed statement of facts. Sec. 5007, R. S. 1919. (8) There is no showing that the stenographer at the former hearing saw the poll books or has any knowledge of their contents. Moreover, the stenographer may be removed by the circuit attorney and another substituted for him. Furthermore, the stenographer is sworn to secrecy. Sec. 705, R. S. 1919. (9) The rules requiring definiteness in a subpoena *duces tecum* and a showing of materiality in the application therefor is not pertinent to a subpoena under Section 5403. In any event, relator cannot avail himself of that rule.

GRAVES, J.—Counsel in this case have strictly followed our rule as to the statements of their case. The rule requires that the party having the burden shall make a fair and concise statement of the case, and that the opposite side "may adopt the statement of appellant; or if not satisfied therewith, he shall in a concise statement correct any errors therein." We commend counsel upon both sides for the strictness with which they have followed this rule. The purpose of the rule was to save time of the court. Counsel for respondent say: "Relator's statement is a fair one. We make one correction only. Respondent does not admit either that the same stenographer will act for the grand jury in case and when the ballots are produced or that the stenographer acting for the former grand jury did, as a matter of fact, inspect the poll books then produced. The pleadings will show that respondent has admitted only that the stenographer who acted for the former grand jury is now acting for the present grand jury."

With this frank admission, we can in safety rely upon relator's statement, leaving the disputed point for a more critical examination.

Relator thus states his case:

"This is an original proceeding in prohibition whereby the relator seeks to prohibit the respondent, as Judge of the Circuit Court of the City of St. Louis, from ordering the issuance of a certain subpoena *duces tecum*, which he is now threatening to do.

"The preliminary rule was issued by this court on July 9, 1921, and at the same time the court made an order permitting the submission of this case on the typewritten record or originals of pleadings.

"Respondent thereafter filed his return, which raised issues of fact. Thereafter, the attorneys representing the respective parties held a conference, at which an agreement was reached, whereby all issues of fact have now been eliminated, and respondent has filed an amended return. Relator has filed a motion for judgment on the pleadings and agreed statement of facts.

"In the hurriedly prepared application for the writ of prohibition relator alleged that if the ballots were marked as required by law they contained on the back thereof the same number which appeared in the registration books in the City of St. Louis opposite the name of the registered voter. After full investigation the relator has become convinced that he was in error as to this allegation, and, therefore, now desires to admit that that point should not be considered by the court in arriving at its conclusion.

"The admitted facts may be summarized briefly as follows:

"Since the 5th day of July, 1921, there has been pending in the division of the Circuit Court of the City of St. Louis over which the respondent presides, an investigation before a grand jury for the purpose of investigating violations of the criminal statutes of the State and for the further purpose of returning indictments against persons who may be found by the grand jury to have violated said statutes.

"On the 6th day of July, 1921, the Circuit Attorney of the City of St. Louis filed in said division of the circuit court an application in writing, praying the issuance of a writ of subpoena *duces tecum.* Said application is in words and figures as follows (caption and signatures omitted):

" 'Now comes Jones H. Parker, Assistant Circuit Attorney in and for the City of St. Louis. State of Missouri, and states to the court that the grand jury within and for the body of the City of St. Louis has under investigation certain matters in which it is necessary that certain evidence, documents, books and papers be pro duced to be examined as evidence before said body, which said evidence, documents, books and papers are in the possession and under the control of John B. Edwards, Alexander Robbins, John H. Holliday and James Y. Player, who, together, comprise the Board of Election Commissioners of the City of St. Louis:

" 'Wherefore, your petitioner prays that the court order to be issued a subpoena *duces tccum* to be served on the said John B. Edwards, Alexander Robbins, John H. Holliday and James Y. Player, to be and appear, in person, before the grand jury of said City of St. Louis on the fifth day of July, 1921, at two o'clock in the afternoon. of said day, and produce before said grand jury certain evidence, documents, books and papers, more particularly described as follows:

" 'The ballot boxes, ballots and the official returns and statements made by the judges and clerks of election to the Board of Election Commissioners used and made in and in connection with the primary election held in the City of St. Louis, Missouri, on the third day of August, 1920, in the following precinct of the following ward, to-wit:

"Twenty-fourth precinct of the Twenty-seventh ward, to be used as evidence in the matters under investigation by said grand jury.'

"Thereafter, and before said application was passed upon, and on, to-wit, the 7th day of July, 1921, your relator appeared *ex partc* in said court, and filed a motion alleging that he was a qualified voter in said precinct, and that he voted at the primary election held in said precinct and ward on August 3, 1920, and in said motion prayed that the court strike out or quash each and every sentence, word and line of said application for subpoena *duces tecum,* alleging in his said motion the following grounds, to-wit:

" '1.  Because this court and the judge thereof is wholly, without power, authority or jurisdiction to order the issuance of a subpoena *duces tecum* requiring and commanding the production before him or said grand jury of the ballots, statements, papers, documents and evidence called for in said application.

" '2.  Because the granting of said order as prayed in said application would destroy your petitioner's right to secrecy in the matter of casting his ballot at said

primary election and would deprive him of his rights guaranteed to him by Section 3, Article VIII, of the Constitution of Missouri and the statutes of said State.

" '3. Because the granting of said order as prayed would use said ballots in a way and disclose information that would tend toward showing how and what ballot your petitioner and the other qualified and voting electors of said precinct and ward voted at said primary election, in direct contravention of the statute in such cases made and provided.

" '4. The application or petition for the alleged subpoena *duces tecum* is indefinite and wholly insufficient in law to confer any jurisdiction or authority in this court to issue said subpoena *duces tecum.*'

"Thereafter, and on the 7th day of July, 1921, respondent, as judge of said circuit court, overruled the relator's motion to strike said application for subpoena *duces tecum* and each and every part thereof, and orally expressed his intention to issue the subpoena *duces tecum* as prayed for in said application.

"Thereupon, and before respondent made his order issuing said subpoena *duces tecum,* application for preliminary rule in prohibition was made to this Honorable Court, with the result above announced.

"The ballots, official returns and statements called for in said application for subpoena *duces tecum* are now in the custody of the Board of Election Commissioners of the City of St. Louis, and it is admitted that the same will be produced before the grand jury if said subpoena *duces tecum* is issued. It is also admitted by the pleadings that the poll book made and used in said precinct and ward at said primary election was produced and exhibited before a grand jury in the City of St. Louis in November, 1920, and in the presence of and before the Assistant Circuit Attorney of said city and the stenographer then and there present aiding and waiting upon said grand jury, and that the stenographer who took down the proceedings of said grand jury is the same person who is now acting in the same capacity for the present

grand jury before whom it is sought to produce said ballots, returns and statements. It is further admitted that the subpoena *duces tecum* is not asked for in aid of and for use in any case of contested election. It is also admitted that the relator was on the 3rd day of August, 1920, the date of said primary election, a duly registered and qualified voter in said precinct and ward in the City of St. Louis, and that he voted at said precinct on said date. The parties hereto have filed a written agreement of facts to the following effect; that the following blank, which is in words and figures as follows:

" 'It is hereby certified that the number of voters voting at this election amounts to .....................

..................................................................

" 'Number of ballots rejected ......................
" 'Why rejected ................................

..................................................................

..................................................................

..................................................................

..................................................................

" 'Given under our hands and seals this ....... day of August, 1920.

" ' ...................

...................

...................

...................

" 'Judges of Election.
" ' ...................
" ' ...................

" 'Clerks of Election.'

appears upon the back side of the last sheet of the poll book used in said primary election at said precinct, and that said blanks were by the election officials of said precinct duly filled in, stating the number of persons voting at said election, stating the number of ballots rejected and why rejected, and that the same was properly

subscribed and signed by the judges and clerks of election in said precinct and ward. It is further admitted that this statement was delivered by the said election officials to the Board of Election Commissioners of the City of St. Louis, and that the same is now in their possession. It also appears from the exhibit attached to said stipulation that said statement appears upon the back of said poll book, and is attached thereto in such a way as that it will be impossible to produce said statement before the grand jury without also producing a part or the whole of the poll book used in said primary at said election. A question of law for the court's determination will arise as to whether or not this statement appearing on the back of the poll book in said precinct is one of the statements called for in said application for subpoena *duces tecum*. This is the statement to which reference is made by relator in his application for writ of prohibition wherein he states that said statement cannot be produced without also producing the poll book in said precinct.

"It thus appears from the admitted facts, that if the subpoena *duces tecum* is issued the ballots from this precinct will be presented to the grand jury and to at least one person, the stenographer who has heretofore seen the poll book from said precinct. The ballots called for in said application for a subpoena *duces tecum* have on the back thereof the number thereof, which number corresponds to the number opposite the names of the voters in the poll book.

"Relator has three theories upon which he asks that the preliminary rule in prohibition be made absolute. They are as follows:

"First. That the production of the ballots alone will disclose the number of the ballot and therefore the number of the person who voted said ballot and will thereby disclose facts which will 'tend toward showing who voted said ballot' in direct contravention of Section 5403, Revised Statutes 1919.

"Second.   That the application for the subpoena *duces tecum* calls for statements which, if produced, will necessarily bring before the grand jury not only the ballots, but the poll books as well, and the same situation will thereby be presented as was involved in the case of State ex rel. Feinstein v. Hartmann, recently decided by this court.

"Third:   That the application for the subpoena *duces tecum* is too indefinite and uncertain to confer jurisdiction upon the circuit court to issue said subpoena *duces tecum*.

"While relator is of the opinion that grounds two and three above will each justify the making of the preliminary rule absolute, yet in order that there may be an end to this litigation we kindly request that the case may not be allowed to turn alone on either of said propositions, but that the court, by its opinion, also decide the first proposition so that the rights of the respective parties in the premises may be finally determined."

The foregoing suffices for an outline of the case.

I.   The questions involved in this case are not entirely new to this court. [State ex rel. v. Hartmann, 231 S. W. 982.] In the case of Hartmann, the coat had the varied colors of Joseph's coat. It covered the whole field. In the instant case some of the various colors have been omitted. In Hartman's case the **Production** Board of Election Commissioners had been **of Ballots** directed, by subpoena *duces tecum,* to bring **and Poll** **Book.** before the grand jury "the ballot boxes and contents, *tally sheets, poll books,* and the official returns and statements made by the judges and clerks of election in certain precincts mentioned." The instant case grows out of the same primary election, and the application for the subpoena *duces tecum* asks that the St. Louis Board of Election Commissioners be required to bring before the grand jury "the ballot boxes, ballots and the official returns and statements made

by the judges and clerks of election to the Board of Election Commissioners.'' It is admitted that respondent threatens to issue a subpoena *duces tecum* as called for in the application, and threatens to give his grand jury possession of such documents. It will be observed that, in comparing this case with Hartmann's case, there has been left out ''tally sheets, and poll books'' only. In other respects the threatened subpoena is as broad as the one in Hartmann's case. It does call for ''the official returns and statements made by the judges and clerks of election.'' It stands admitted that an important statement and return of such judges and clerks is on the back page of the poll book, and that such poll book shows the number of the ballots cast by the voters. We are all familiar with usual poll books. The voters are numbered consecutively and the number of the voter in the poll book is placed upon the back of his ballot. With the possession of the ballots, and the number on the backs thereof, one having the poll book with the number and name of the voter could readily determine, by a comparison of the numbers, each candidate for whom the voter cast his ballot. To illustrate, the grand jurors, or other legally in their presence, could look at the number of a given ballot and such person could then turn to the same number upon the poll book and there obtain the name and address of the person who voted that ballot. [R. S. 1919, secs. 5246 and 5247.] The information thus obtained would go to each office for which the voter had voted. The opportunity would be there for the grand jury and all of its legal attendants to discover how each voter had cast his ballot. This was condemned in State ex rel. v. Hartmann, 231 S. W. 982. The only question is, whether or not the admissions in this case bring it within the Hartmann case. We think they do. It stands admitted that at least one of the statements from the judges and clerks is to be found upon the back page of the poll book. The poll book is defined by statute. It is the book in which the names of the voters are registered in numerical order,

and opposite the name of each voter is the number which appears upon the back of his ballot. These poll books are required to be filed with the election commissioners, and there is no authority of law for the mutilation of them. In other words, neither the circuit judge, nor the election commissioners, can tear apart or otherwise despoil these books before they go to the grand jury. They must go there in the form in which they were returned to the election commissioners, or not at all. By that form the statement of the judges and clerks (called for by the application and the anticipated subpoena *duces tecum*) is on the back leaf of the poll book. No authority is granted by law for the spoliation of this book. If it goes before the grand jury at all, it must go as a whole, and if it so goes the means is at hand for all legally present to determine how each voter voted upon the several different offices. Section 5403, Revised Statutes 1919, in the *proviso* thereof, prohibits the use of the ballots named in the section, if the use thereof would "tend toward showing who voted any ballot." The use of the ballot itself might not show or tend to show (as to this relator interposes a question) how any particular voter cast his ballot. But, if the persons were possessed of the ballots, and also the poll book, it could be easily determined just how each voter cast his ballot. The use of such ballots in connection with the poll books would, in our judgment, "tend toward showing who voted any ballot," and would violate the proviso of Section 5403, supra. It would be unreasonable to hold that you could give thirteen or more men the possession of both the ballots and the poll book, and not hold that such use of the ballots would tend to show how each voter cast his ballot. It places the power in the hands of the grand jury to find out the character of each vote recorded by the ballots and book.

II. Other questions are pressed by relator, but in view of what we have ruled, supra, we think further

290 Mo.—11

comment is not required on this record, or any other record which could be made up under the facts of the primary election involved in this and the Hartmann case.

**Certificate to Poll Book.** The poll books are official documents, and if they go to the grand jury at all, must go as a whole, which includes the certificate on the back page thereof. The certificate on the back page thereof cannot be severed from this public document. To produce the certificate, means to produce the poll book, and to turn over the poll book and the ballots to a grand jury, and its legal attendants, is in violation of Section 5403, supra. Our preliminary rule in prohibition should be made absolute, and it is so ordered. All concur; *D. E. Blair, J.,* in separate opinion; *Higbee, J.,* absent.

D. E. BLAIR, J. (concurring).—In the reasoning and the conclusion reached in State ex rel. v. Hartmann, 231 S. W. 982, I did not concur and am still of the opinion that case was not well ruled, but that case stands as the final interpretation by this court en banc of the law applicable to the facts in that case and the ruling made in Hartmann's case is controlling in all cases not distinguishable on the facts.

I agree with the holding of the majority that the certificate of the judges and clerks of election, attached to and made a part of the poll books, cannot be produced and used before the grand jury without such use tending "toward showing who voted any ballot." This brings the acts here sought to be prohibited within the character of acts prohibited by the rule laid down in Hartmann's case and, yielding as is my duty to the controlling authority of that case, leads to my concurrence in the result reached in the instant case.