STATE OF MISSOURI at the relation of FRANKLIN MILLER, Circuit Attorney of the City of St. Louis, Relator, v. FRANK C. O'MALLEY, Judge of the Circuit Court of the City of St. Louis.—117 S. W. (2d) 319.

Court en Banc, May 21, 1938.

*Franklin Miller, pro se,* for relator; *John L. Sullivan* of counsel.

*Walter N. Davis* for respondent.

ELLISON, J.—Original proceeding in certiorari brought by the Honorable Franklin Miller, Circuit Attorney of the City of St. Louis, to review the record in a certain *ex parte* proceeding entitled In The Matter of The Grand Jury, pending in the circuit court of said city, Division No. 11, over which the respondent, Honorable Frank C. O'Malley, Circuit Judge, then was presiding. The proceeding was this. The relator, Judge Miller, filed a verified application in said court on April 16, 1937, for the issuance of a *subpoena duces tecum* directed to the Secretary of the Board of Election Commissioners of St. Louis, commanding him to produce before the grand jury six days later on April 20, all ballots cast, rejected and spoiled in the 1st Precinct of the Fifth Ward at a special bond election, commonly known as the "Jefferson Memorial Plaza Bond Issue Election" held in the city some nineteen months earlier on September 10, 1935. The respondent had therefore ordered the issuance of a *subpoena duces tecum* bringing in the talley sheets, return of the votes cast and certified statements of the result of the election; so that an examination of the ballots in connection with these would disclose how every voter had voted.

The application alleged that the grand jury had under investigation certain charges of criminal frauds alleged to have been committed in said voting precinct (and others) at said election; and that said ballots were necessary and material evidence in the investigation. It further alleged that said investigation was begun by a former grand jury on September 8, 1936, within twelve months after the election and thereafter "has been continuously kept alive by the Circuit Attorney, and has been and now is a pending investigation before the present grand jury." The respondent judge denied the application,

for reasons stated in two memorandums filed, and this certiorari proceeding followed.

A number of legal questions are presented by the record: (1) is a certiorari the proper remedy under the facts? (2) was the special bond election such an election as comes within the proviso of Article VIII, Section 3 of the State Constitution preserving the secrecy of the ballot, but authorizing the opening, examination, counting and comparison of ballots in certain instances? (3) is the constitutional provision self-enforcing? (4) were the proceedings below governed by Section 10315, Revised Statutes 1929 (Mo. Stat. Ann., p. 3753), or Section 10619, Revised Statutes 1929 (Mo. Stat. Ann., p. 3903)? (5) are these two sections constitutional? (6) should the circuit court have ordered the issuance of the *subpoena duces tecum* for the ballots even though no grand jury investigation was pending, since they were in existence and accessible?

■ I. Relator and respondent agree that the scope of review by certiorari is never extended to the merits. The action of the inferior body is final and conclusive on every question except jurisdiction or power. The only questions presented are questions of law arising on the face of the record. Both parties cite State ex rel. Kennedy v. Remmers, 340 Mo. 126, 131, 101 S. W. (2d) 70, 71, which so holds.

■ II. We have ruled that the writ of certiorari ordinarily will be refused where there was no final judgment or order below and the proceeding in which the writ is sought is still pending and undetermined in the lower tribunal. [State ex rel. United Brick & Tile Co. v. Wright, 339 Mo. 160, 165, 95 S. W. (2d) 804, 805.] The reasonableness of this rule will be apparent at once. We cannot undertake to review by certiorari *parts* of records brought up piecemeal from time to time during the pendency of cases in lower courts. It is alleged in the relator's petition that the grand jury investigation is still pending below. But even so the application in the circuit court for a *subpoena duces tecum* and the order denying it constituted, in effect, a proceeding separate from the *grand jury* investigation, and the order was to all intents and purposes final. We shall, therefore, concede that our writ was properly issued, so far as the question of finality is concerned, especially since this court on March 24, 1937, less than a month before the filing of the petition for certiorari herein on April 21, 1937, denied an application for an alternative writ of mandamus directed to Judge Joynt in the same matter.

■ III. It may be conceded further that the court's action in issuing or denying a *subpoena duces tecum* is discretionary or judicial, as opposed to ministerial. For the court must pass upon: the

relevancy and materiality of the evidence sought to be brought in, 70 C. J., secs. 34, 39, 40, pp. 48, 52-3; State ex rel. v. Wurdeman, 176 Mo. App. 540, 158 S. W. 436; the hardships entailed in producing it, Ex parte Brown, 72 Mo. 83, 96, 37 Am. Rep. 426; and, of course, the legal question whether it is subject to subpoena. This being true certiorari will lie. [State ex rel. Manion v. Dawson, 284 Mo. 490, 506, 225 S. W. 97, 100; State ex rel. Davidson v. Caldwell, 310 Mo. 397, 406-7, 276 S. W. 631, 633.]

■ IV. Was the bond election within the provisions of Section 3, Aricle VIII, Constitution of Missouri, submitted by the Constitutional Convention of 1922-3 and adopted in 1924? We set out the pertinent parts of the sections before and after amendment, the present section being shown in the right column:

"All elections by the people shall be by ballot. . . . The election officers shall be sworn or affirmed not to disclose how any voter shall have voted, unless required to do so as witnesses in a judicial proceeding: *Provided,* that in all cases of contested elections the ballots cast may be counted, compared with the list of voters, and examined under such safeguards and regulations as may be prescribed by law."

"All elections by the people shall be by ballot. . . . The election officers shall be sworn or affirmed not to disclose how any voter shall have voted; *Provided,* That in cases of contested elections, grand jury investigations and in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue, such officers may be required to testify and the ballots cast may be opened, examined, counted, compared with the list of voters and received as evidence."

The relator expressly contends the bond election was an "election" within the meaning of the whole section. It is evident that the respondent must concede such elections are covered by the first part of the section at least, guarding the secrecy of the ballot. How else can protection for the ballots of voters in the instant election be claimed thereunder? It was said in Dooley v. Jackson, 104 Mo. App. 21, 30, 78 S. W. 330, 333, that the word election frequently occurs in the Constitution and that wherever used it means choosing a person for office by vote, and nowhere is used in the sense of *nominating* a candidate for office by vote. This decision was followed in later cases, including State ex rel. Von Stade v. Taylor, 220 Mo. 618, 630-1, 119 S. W. 373, 376, and State ex rel. Dunn v. Coburn, 260 Mo. 177, 190, 168 S. W. 956, 958. That is true as distinguishing between or-

dinary elections of officers and primary elections to nominate candidates for office. Primary elections could not have been in mind when the Constitution of 1875 was framed and adopted because they did not come into existence until fourteen years later when the first fragmentary provision therefor was made in Articles 3 and 4, Chapter 60, Revised Statutes 1889. The law is well settled that before adoption of the present Section 3, Article VIII in 1924 the Constitution did not cover primary elections. See the following cases decided just before and during the Constitutional Convention of 1922-1923. [State ex rel. Feinstein v. Hartmann (Mo. Banc), 231 S. W. 982, 985(1); State ex rel. Murphy v. Landwehr, 290 Mo. 150, 159, 234 S. W. 656, 658; State ex rel. Copeland v. Wurdeman, 295 Mo. 458, 245 S. W. 551.]

But it is not true that wherever the word elections appears in the Constitution it refers exclusively to the election of public officers by vote. Section 12, Article X, limiting public indebtedness without the assent of two-thirds of the voters, has provided ever since 1875 for an election by the people on that question. Such elections are contemplated by the Constitution. Section 3, Article VIII has always begun with the words "all elections by the people." Many years ago these words were held to mean exactly what they say (save as to primary elections). [State ex rel. O'Connell v. Board of St. Louis Public Schools, 112 Mo. 213, 217-8, 20 S. W. 484, 485.] The very election here involved was recognized by this court en banc as an election by the people in Vrooman v. St. Louis, 337 Mo. 933, 88 S. W. (2d) 189. There can be no doubt about the fact that the section guarantees the secrecy of the ballot in bond elections, except as relaxed in the proviso.

V. The relator contends the proviso appended to Section 3, Article VIII in 1924 permits the opening of the ballots in grand jury investigations of fraud in bond elections. In this we think he is right. Before 1924 the proviso allowed it only in all cases of contested elections (and, of course, primary elections, which were not contemplated or protected by the Constitution). The amended proviso permits it: (1) in all cases of contested elections; (2) grand jury investigations; (3) and in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue.

The old proviso was held in many decisions to sanction the opening of the ballots only in statutory contests over the election of public officers. [State ex rel. Ewing v. Francis, 88 Mo. 557, 561; State ex rel. Hollman v. McElhinney, 315 Mo. 731, 735, 286 S. W. 951, 952.] But this McElhinney case ruled the amended proviso protects primary elections also, covers contests thereover, and permits the open-

ing of the ballots therein. [See, also, State ex rel. McDonald v. Lollis, 326 Mo. 644, 648, 33 S. W. (2d) 98, 99.] The opening of the ballots in contests over bond elections is held to be unauthorized because the Legislature has not provided for such contests—not because they are not ''elections'' or ''contests'' within the meaning of the Constitution. [State ex rel. Wahl v. Speer, 284 Mo. 45, 223 S. W. 655; State ex rel. Jackson County v. Waltner, 340 Mo. 137, 142, 100 S. W. (2d) 272, 274.]

It has long been the law that before the 1924 amendment the proviso of Section 3, Article VIII did not authorize the opening and use of ballots as evidence in grand jury investigations of election frauds, Ex parte Arnold, 128 Mo. 256, 30 S. W. 768, 49 Am. St. Rep. 557, 33 L. R. A. 386; State ex rel. Feinstein v. Hartmann, supra, 231 S. W. 982; In re Oppenstein, 289 Mo. 421, 233 S. W. 440; State ex rel. Murphy v. Landwehr, supra, 290 Mo. l. c. 159, 234 S. W. l. c. 658. Now, this may be done even in the investigation of fraud at primary elections. [State ex rel. Dengel v. Hartmann, 339 Mo. 200, 96 S. W. (2d) 329.] And it is plainly intimated that the power extends to frauds in bond elections. [State ex rel. Jackson County v. Waltner, supra, 340 Mo. l. c. 142, 100 S. W. (2d) l. c. 274.] We there held election contests are purely statutory, and cannot be maintained in the absence of an authorizing statute; but we added, ''the law affords other means of uncovering fraud in elections.'' The present proviso says the ballots ''may be opened, examined, counted, compared with the list of voters and received as evidence'' in (among other instances) ''grand jury investigations.'' The opening part of the section to which this proviso is appended as an exception, guards the secrecy of the ballot in ''all elections by the people.'' Bond elections come within that designation and are therefore subject to the proviso.

VI. But counsel for respondent asserts Section 3, Article VIII is not self-enforcing, and that no statutory provision has been made governing the use of the ballots in grand jury investigations of fraud in bond elections. This contention seems to be contradictory of a later contention made by him that Section 10315, Revised Statutes 1929 (Mo. Stat. Ann., p. 3573), applies to such investigations. Nevertheless we shall consider it. A constitutional provision may be self-enforcing in part and not so as to another part. [State ex inf. Barker v. Duncan, 265 Mo. 26, 41-3, 175 S. W. 940, 944, Ann. Cas. 1916D, 1.] Undoubtedly, the part of the section permitting the opening of ballots in election contests is not self-enforcing, in the sense that further provision must be made by statute for such contests. But the part which provides for the use of the ballots as

evidence in grand jury investigations is self-enforcing, and no legislative default can thwart it.

This, however, does not mean the General Assembly cannot enact reasonable regulations on the subject. [Barker v. St. Louis County, 340 Mo. 986, 104 S. W. (2d) 371, 374 (2).] The original proviso permitted the opening of the ballots in election contests ''under such safeguards and regulations as may be prescribed by law.'' The present proviso does not contain a provision of that character. Notwithstanding this, the Legislature has the power to enact reasonable regulations. The constitutional provision evidently does not mean the ballots shall be preserved for all time so that they may be available as evidence indefinitely in the proceedings mentioned therein. Statutes of Limitations can render them valueless as evidence in criminal prosecutions; so, too, may the short period of limitation within which election contests must be brought. The statute has always required these to be instituted within a few weeks after the election; and the courts are required to determine them promptly and summarily. Under the Constitution, Section 11, Article XIV, there must be at least one grand jury in each county each year; and others may be convened as necessary. Sections 8753 and 8838 (Mo. Stat. Ann., pp. 4694, 4733). Looking at the history of legislation on these questions it is easy to see the framers of the Constitution must have intended that the General Assembly should have a power of regulation over such matters.

■■ VII. Two regulatory statutes governing the preservation of ballots have been enacted; Sections 10315 and 10619, Revised Statutes 1929 (Mo. Stat. Ann., pp. 3753, 3903). The former appears in the general election laws, and has been in the statutes in substantially the same form since Laws 1877, page 246. Still earlier, provision was made for the sealing of the ballots and their preservation for twelve months in Revised Statutes 1865, page 61, section 15, and Laws 1863, page 17, section 4. Before that time voting at elections was not secret, but might be done either by ballot or *viva voce*. [R. S. 1855, p. 703, sec. 37.] Section 10619 was first enacted at an extra session of the General Assembly by Laws 1895, page 31, section 54, in an act creating a board of election commissioners in cities having over 100,-000 inhabitants. The concluding part of the section was the same as it is now, save for the words we have italicized, which were added when the section was repealed and reenacted by Laws 1921, page 363, section 55. The parts of the two sections here involved are as follows:

"Sec. 10315 . . . and the ballots, after being counted, shall be sealed up in a package and delivered to the clerk of the county court or corresponding officer in any city not within a county, who shall deposit them in his office, where they shall be safely preserved for twelve months; and the said officer shall not allow the same to be inspected, unless in case of contested elections, or the same become necessary to be used in evidence, and then only on the order of the proper court, or a judge thereof in vacation, under such restrictions for their safekeeping and return as the court or judge making the same may deem necessary; and at the end of twelve months, said officer shall publicly destroy the same by burning, without inspection;"

"Sec. 10619 . . . . said board of election commissioners shall securely keep said ballots for twelve months, not opening or inspecting them themselves nor allowing any one else to do so except *when opening and inspecting them as provided in this article or* upon order of court in case of contested elections, or when it shall be necessary to produce them *upon the demand of any grand jury or* at the trial of any offense committed under this *article.* At the end of twelve months after said election, said ballot(s) shall be destroyed: Provided, that if any contest of the election of any officer voted for at such election *or investigation by any grand jury* or prosecution under this article, shall be pending at the expiration of said time, the said ballots shall not be destroyed until such contest or prosecution be finally determined.

It will be noticed Section 10315 says unconditionally that the ballots shall be destroyed at the end of twelve months after the election, which was not done in this case. Section 10619 says they shall not be destroyed until the final determination of any pending election contest or prosecution under the article—it does *not* say until the final determination of any pending grand jury investigation. But relator insists it means that, and for the purposes of this discussion we shall assume it does. He further contends this latter section, Section 10619, is controlling here: because it appears in the article applicable to cities having over 100,000 inhabitants, of which St. Louis is one; and because the opening section of the article, Section 10566, Revised Statutes 1929 (Mo. Stat. Ann., p. 3859), says elections in the cities specified shall also be subject to all provisions of the general election law "so far as the same are not inconsistent or in conflict herewith." The respondent maintains Section 10315 is the governing statute: because it is in the general election law, which Section 10338 (Mo. Stat. Ann., p. 3763), expressly makes applicable "to all the

election precincts in this state;" and also because Section 10619 is unconstitutional, so far as applicable to the instant case, for two reasons.

VIII. The first of these is that the italicized part of the section was added in 1921, three years before Section 3, Article VIII was amended in 1924 to permit use of the ballots as evidence in grand jury investigations of election frauds. This objection seems to us insurmountable. Referring back to the section as set out above, it will be seen the italicized lines are the part providing for the production of the ballots "upon the demand of any grand jury" and forbidding (as we are assuming) their destruction until the final determination of any pending "investigation by any grand jury." These provisions were incorporated in the section in 1921 at a time when Section 3, Article VIII was held by all our decisions to prohibit the opening of the ballots in grand jury investigations of election frauds (save in primary elections). They were, therefore, unconstitutional.

An unconstitutional statute is no law and confers no rights. [12 C. J., sec. 168, p. 748; 6 R. C. L., sec. 117, p. 117.] This is true from the date of its enactment, and not merely from the date of the decision so branding it. [12 C. J., sec. 228, p. 800; Gilkeson v. Mo. Pac. Ry. Co., 222 Mo. 173, 204, 121 S. W. 138, 148, 24 L. R. A. (N. S.) 844, 17 Ann. Cas. 763; Pederson v. Patterson, 124 Ore. 105, 109, 258 Pac. 204.] It is not validated by a subsequent constitutional amendment, except, possibly, where the latter ratifies and confirms it—which was not done in this case. [59 C. J., sec. 204, p. 639; State ex rel. Stevenson v. Tufly, 20 Nev. 427, 22 Pac. 1054, 19 Am. St. Rep. 374; Hammond v. Clark, 136 Ga. 313, 334, 71 S. E. 479, 38 L. R. A. (N. S.) 77, note.] Neither can the argument be made that the inclusion of Section 10619, as enacted in 1921, in the Revised Statutes of 1929 had the effect of reenacting it as of the latter year, and making it conform to the 1924 amendment of Section 3, Article VIII. For Section 683, Revised Statutes 1929 (Mo. Stat. Ann., p. 4929), providing for the revision of our statutes, expressly says "but the provisions of the Revised Statutes, so far as they are the same as those of prior laws, shall be construed as a continuation of such laws and not as new enactments." We think the parts of Section 10619 authorizing the use of the ballots as evidence in grand jury investigations of election frauds are clearly unconstitutional for the reasons stated.

IX. Respondent's second contention that Section 10619 is unconstitutional is based on the ground that it is local and special. We discuss it because it affects another part of the statute than that

added in 1921 and affected by the ruling made in the preceding paragraph; also because the rulings of Judges Joynt and O'Malley below were grounded thereon, in part. Respondent does not argue that the entire article in which the section appears, or even the whole section, is invalid, but only the part here involved. It will be remembered that Section 10315 unconditionally requires the ballots to be destroyed twelve months after the election. This section appears in the general election law applicable to the State at large. The proviso in Section 10619, applicable to cities of 100,000 inhabitants, says the ballots shall not be destroyed if any election contest, grand jury investigation or criminal prosecution be pending at the expiration of said twelve month period, but the same *shall be preserved until the final determination of such contest, investigation or prosecution.* In this case the relator claims a grand jury investigation was still pending nineteen months after the election. These provisions operate like a special Statute of Limitations. They make election ballots available as evidence for twelve months in grand jury investigations and criminal prosecutions of persons in the State at large, and preserve that evidence for an indefinitely longer time in similar investigations and prosecutions of persons in cities of over 100,000 inhabitants.

Though it may be conceded for the purposes of the case that crime of all kinds is more prevalent in large cities than in smaller communities, yet the rules of evidence and the statutory punishment therefore are the same throughout the State. As was said in State v. Gregori, 318 Mo. 998, 1001, 2 S. W. (2d) 747, 748: "It is the general doctrine that the law, relative to those who may be charged and convicted of crime, as well as the punishment to be inflicted therefor, shall operate equally upon every citizen or inhabitant of this State." Similarly, In re French, 315 Mo. 75, 82, 285 S. W. 513, 514, 47 A. L. R. 688, quotes the following from 2 Cooley's Constitutional Limitations (8 Ed.), pages 807-9: "A statute would not be constitutional . . . which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt. . . . Every one has a right to demand that he be governed by general rules, and a special statute which, without his consent, singles his case out as one to be regulated by a different law from that which applied in all similar cases, would not be legitimate legislation, but would be such an arbitrary mandate as is not within the province of free governments." We think Section 10619 discriminates against individuals under grand jury investigation or prosecution for election frauds in cities of 100,000 inhabitants, and for that reason is local and special legislation violating Section 53, Article IV of the State Constitution.

654

X. Relator makes the further point that "if there is any unconstitutionality in this case" both Sections 10315 and 10619 are unconstitutional. This is not a proper way to raise a constitutional question, and is violently inconsistent with his major contention. But we shall consider the question briefly. Relator points to the part of Section 3, Article VIII authorizing the opening of the ballots "in the trial of all civil or criminal cases in which the violation of any law relating to elections, including nominating elections, is under investigation or at issue." He says some violations of the election laws are felonies and that as to these the Statute of Limitations is three years. From this he argues it is the constitutional intent that the ballots should be preserved three years for use as evidence in such cases, and that the provisions in Sections 10315 and 10619 requiring their destruction in one year are violative of that intent.

The answer to that contention is plain. Section 3, Article VIII does not attempt to fix any period of limitation for crimes against the election laws; it leaves that to the General Assembly. Sometimes they can be prosecuted without the use of the ballots as evidence. If the Legislature can fix a period of limitation for the prosecution of such crimes (as, of course, it can) it can also fix a one year period of limitation for the use of the ballots as evidence in such prosecutions, as it has done for the last seventy-five years. The reasons for such restrictions and why the Legislature has failed to harmonize them with general Statutes of Limitation are discussed in State ex rel. Von Stade v. Taylor, supra, 220 Mo. l. c. 635, 119 S. W. l. c. 378, and Ex parte Arnold, supra, 128 Mo. l. c. 267, 30 S. W. l. c. 771, 33 L. R. A. 386, 49 Am. St. Rep. 557.

XI. Since Section 10619 is unconstitutional insofar as it purports to authorize the preservation and use of the ballots as evidence in grand jury investigations of election frauds until the final determination thereof, it follows that Section 10315 is the statute applicable to this case. Whether the former be considered merely an exception to the latter, or whether (as relator contends in one part of his brief) it was to the extent mentioned a repealing statute because special and enacted later, in either event Section 10315 in the general election law still stands and governs the proceedings below. The law on this point is stated in a headnote to Copeland v. City of St. Joseph, 126 Mo. 417, 29 S. W. 281, which accurately reflects the holding in the opinion: "Although an act, by its terms, repeals all parts of former acts inconsistent with, or repugnant to, its provisions, yet it will not repeal a section of the former act corresponding in substance with a section of the new act, where the latter section is unconstitutional."

XII. Relator argues further that even though Section 10315 is the controlling statute, nevertheless its primary purpose is to preserve the ballots as evidence, not to destroy them in twelve months—unless they are not needed as evidence within that time. By liberal construction he makes the section as broad as the unconstitutional Section 10619. This is wholly inconsistent with his main contention that the two sections are inconsistent. A reading of the part of Section 10315 set out above will show that it can bear no such construction. Every disclosure of the ballots that it authorizes must be made under safeguards within twelve months after the election. At the end of that time the ballots are to be publicly destroyed without inspection. The object is to preserve the secrecy of the ballot, not to avoid a mere crowding of the custodian's vaults. This may result in destroying evidence and covering up fraud. On the other hand frauds, coercion and the sale of votes, equally detrimental to the public interest, would be made possible if the secrecy of the ballot were not strictly guarded. These questions have been discussed in many decisions of this court. The General Assembly has made a choice of policies; it is not for us to change it.

XIII. Finally the contention is made that since the ballots are in existence and available as evidence, this court should not be "oversensitive in regard to the source from which the evidence comes," and should lend its process to compelling their production in the teeth of Section 10315 and the obvious constitutional intent that the ballots be kept secret, except as otherwise permitted by the proviso to Section 3, Article VIII of the Constitution, subject to reasonable regulation by the General Assembly. In other words, it is the relator's position that even though there had never been an investigation of alleged frauds in the bond election of September 10, 1935, until the empaneling nineteen months later of the April Term, 1937, grand jury, still, since that was within the period of the three-year Statute of Limitations applicable to felonies, we should quash the record of the respondent judge and require him to order the ballots brought before it.

One good answer to that contention is that it was not made in the trial court. Relator's application there for the issuance of a *subpoena duces tecum* was based on the unconstitutional Section 10619, supra, And as we stated at the beginning of this opinion, in certiorari we do not look to the merits of the case, but review the record only for errors jurisdictional in nature. Furthermore the rule announced in State v. Sharpless, 212 Mo. 176, 196-200, 111 S. W. 69, 75, and State v. Pomeroy, 130 Mo. 489, 497-9, 32 S. W. 1002, 1003-4, cited by relator, where damaging evidence was found on the person or premises of the defendant at the time of his arrest, has no application here.

In this case this court and the circuit court are asked to *compel* to production of evidence which is legally nonexistent, in violation of the Constitutional and statute, over timely objection made. These Constitutional and statutory provisions are restrictions on the power of the government and are binding on all courts where the point is not waived. [State v. Owens, 302 Mo. 348, 259 S. W. 100, 32 A. L. R. 383; State v. Lock, 302 Mo. 400, 411, 259 S. W. 116, 120; State v. Tunnell, 302 Mo. 433, 439, 259 S. W. 128, 130.]

For the reasons stated our writ of certiorari is quashed. All concur.